This is a teacher tenure case.
Ann W. Heath was employed as a teacher by the Talladega City Board of Education in 1975. In April 1979 she was a math teacher at the Talladega Middle School. On the tenth day of that month, Sebron Harmon, a guidance counselor and, allegedly, assistant principal for the school, had students from Mrs. Heath's homeroom summoned to the school lunchroom by means of an intercom in an attempt to determine which of them were responsible for littering the floor of the cafeteria with food.
Upon hearing this summons over the intercom, Mrs. Heath temporarily left her sixth period math class and returned to the lunchroom. Several teachers who were present in the lunchroom at the time Mrs. Heath returned to the cafeteria testified that she entered the lunchroom through an exit door asking Harmon in a loud, angry voice why he called her homeroom back to the cafeteria. Mrs. Heath then exclaimed that Mr. Harmon had humiliated and embarrassed her. Mr. Harmon proceeded to inform Mrs. Heath that he would handle the problem of determining which of her students, if any, should be disciplined for their lunchroom behavior and that she should return to her sixth period class. Mrs. Heath, however, refused to return to her math class until she had finished questioning the propriety of disciplining her students and had told them that, contrary to Mr. Harmon's instructions, they could return to their classes without cleaning up any food which they had spilled onto the cafeteria floor. Mrs. Heath testified that Mr. Harmon, not she, told her homeroom students that they did not have to clean up any portion of the lunchroom and could return to their classes. She denied that she had unnecessarily raised her voice while speaking with Mr. Harmon or that she had become angry with him during the course of their conversation in the lunchroom.
That same day Mr. Harmon notified the superintendent of the Talladega City School System, Mr. Pearino Gaither, of Mrs. Heath's behavior in the lunchroom. After conducting his own investigation of the April 10 incident, Mr. Gaither informed Mrs. Heath, in writing, that the Talladega City Board of Education (hereinafter referred to as the Board) would meet in executive session on the evening of April 19, 1979 for the purpose of determining her "involvement in a controversy with Mr. Sebron Harmon on Tuesday, April 10, 1979." She was "requested" to and did attend this meeting. However, the Board first heard, in Mrs. Heath's absence, the testimony of three teachers concerning the extent of her participation in the April 10 incident. Mrs. Heath was not afforded the opportunity to cross-examine these witnesses but was permitted, in their absence, to present her version of her April 10 argument with Mr. Harmon to the Board. No minutes or other written memorial of the April 19 meeting was taken nor was Mrs. Heath informed that she had violated any specific rule or policy of the Board for which she might be terminated as a teacher in the Talladega City School System. No further action with regard to the above incident was taken until May 22, 1979 when Superintendent Gaither recommended to the Board that Mrs. Heath's employment contract with the city school system be cancelled on the ground of insubordination. That same day the Board adopted the following resolution:
 Resolved, that cause exists for the cancellation of the employment contract of Mrs. Ann W. Heath; that written notice to Mrs. Heath should be given by the Board through its Secretary informing her of the proposed cancellation of her employment contract on account of insubordination regarding her conduct with Mr. Sebron Harmon on Tuesday, April 10, 1979; that the said notice should name June 19, 1979, at 5:00 o'clock P.M., at Graham Elementary School Library, 403 Cedar Street, Talladega, Alabama, as the exact time and place at which Mrs. Heath *Page 70 
may appear before the Board to answer said notice; and that said written notice should be served upon Mrs. Heath by United States registered mail with postage prepaid thereon to Mrs. Heath's last known address or addresses.
Pursuant to this resolution, Mr. Gaither, by a letter dated May 24, 1979, notified Mrs. Heath, in accordance with § 16-24-9 of the 1975 Code of Alabama, that the Board would meet again on June 19, 1979, to consider the cancellation of her employment contract on the ground of insubordination with regard to the orders of Mr. Harmon. This meeting was later continued to June 25, 1979, at which time Mrs. Heath appeared before the Board to contest the cancellation of her contract for insubordination. After receiving evidence and oral testimony on behalf of the city school system and Mrs. Heath, the Board, on June 27, 1979, cancelled Mrs. Heath's employment contract with the Talladega City School System. Mrs. Heath appealed the Board's decision to the Alabama State Tenure Commission. The Commission sustained the Board's decision, finding that "the action of the Board was in compliance with the Teacher Tenure Law and was neither arbitrarily unjust nor for political or personal reasons." Mrs. Heath thereafter filed a petition for writ of mandamus in accordance with § 16-24-38 of the Code with the Circuit Court of Talladega County requesting that court to vacate the Tenure Commission's decision on the grounds that it was arbitrary, unjust and did not comply with the provisions of Chapter 24, Title 16 of the Code in that:
 a. The Talladega City School Board unlawfully canceled the contract of petitioner Heath, for "insubordination" because she allegedly refused to follow a request given her by a fellow teacher;
 b. Said School Board unlawfully canceled the contract of petitioner without the written recommendation of the Superintendent of Education for the Talladega City School System; and
 c. Said School Board unlawfully subjected petitioner to two board hearings to consider the same conduct which gave rise to her dismissal.
The circuit court upheld the decision of the Commission and Mrs. Heath has perfected a timely appeal of this judgment to this court. The issues raised in the circuit court by Mrs. Heath are the same issues argued in her brief here. We will consider them seriatim.
Section 16-24-8 of the 1975 Code of Alabama authorizes a tenured teacher's contract of employment with a school system to be cancelled upon proof of insubordination.
The willful refusal of a teacher to obey an order given to him or her by a school principal is deemed to be insubordination. See generally Lewis v. Board of SchoolCommissioners of Mobile County, 419 F. Supp. 476 (S.D.Ala. 1976). Insubordination has also been defined as the refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed so long as such order is reasonably related to the duties of the employee. Forstner v. City County of San Francisco, 243 Cal.App.2d 625, 52 Cal.Rptr. 621
(1966); Shockley v. Board of Education Laurel Special SchoolDistrict, 51 Del. 546, 149 A.2d 331, rev'd on other grounds,52 Del. 237, 155 A.2d 323 (1959). "Insubordinate" is defined inWebster's Seventh New Collegiate Dictionary (1969), as "unwilling to submit to authority."
As noted above, the Board of Education found that Mrs. Heath was insubordinate and cancelled her employment contract. The Tenure Commission found that such order was not arbitrarily unjust. We are not authorized to reverse the Tenure Commission's order unless we find that the preponderance and overwhelming weight of the evidence is contrary to the Commission's decision. Sumter County Board of Education v.Alabama State Tenure Commission, Ala., 352 So.2d 1137 (1977). We do not so find.
Although the evidence clearly shows that Mr. Harmon was never officially designated an assistant principal by the Talladega City *Page 71 
Board of Education, the preponderance of the evidence shows that he was acting as the assistant principal and was the person in charge of student behavior in the lunchroom on the occasion in question.
Article five, section two of the By-laws and Policies of the Talladega City Board of Education permits a school principal to assign certain of his administrative duties, such as supervising student behavior in a school lunchroom, to an agent, such as a teacher. Although the principal of the Talladega Middle School, Mr. Troy Griffin, never expressly informed any teacher in the school that he was delegating all or a portion of his responsibility for ensuring orderly student behavior in the school's cafeteria to Mr. Harmon, Harmon and two teachers testified that Mr. Harmon regularly supervised the behavior of the school's eighth grade students in the school lunchroom and that it was understood by the school personnel that Mr. Harmon was the person in charge. This evidence sufficiently shows that Mr. Griffin did in fact delegate at least part of his responsibility for supervising the behavior of students in the school's cafeteria to his agent, Mr. Harmon.See generally Perry v. Meredith, Ala.Civ.App., 381 So.2d 649
(1980). ("Although the burden of proving agency rests on the party asserting it, such a relationship may arise from facts and appearances which lead others to believe that such a relationship has been created.") Furthermore, the evidence reflects that it was generally understood that Mr. Harmon was acting as the assistant principal and was in charge of the school in the absence of the principal.
Thus, we consider the evidence sufficient to show that on April 10, 1979 Mr. Harmon was in charge of monitoring student behavior in the Talladega Middle School lunchroom when Mrs. Heath directly challenged his supervisory authority over the lunchroom behavior of her homeroom students by instructing them to return to their classes. See 2A C.J.S. Agency § 143 (1972). And, Mrs. Heath's refusal to obey Mr. Harmon's directives on the occasion in question amounted to insubordination for which her teaching contract could be justifiably cancelled. Seegenerally Lewis v. Board of School Commissioners of MobileCounty, supra.
Next Mrs. Heath urges this court to hold that §§ 16-11-17 and16-12-16 of the 1975 Code of Alabama mandate that, as a matter of law, a tenured teacher's contract of employment with a city school board cannot be terminated unless the city school superintendent first recommends in writing to the board that the contract be cancelled.
The primary purpose of §§ 16-11-17 and 16-12-16 is to ensure that the city board of education and its superintendent act in concert in deciding whether to cancel a teacher's contract of employment. See Vodantis v. Birmingham Board of Education, Ala., 373 So.2d 320 (1979). It is made clear that the Board cannot terminate the contract of a tenured teacher without the recommendation of the superintendent and neither can the superintendent discharge a teacher without the affirmative act of the Board.
In the case at bar the minutes of the City Board of Education reflect that the superintendent, after an investigation of the incident in question, recommended that Mrs. Heath's contract of employment be cancelled. The Board, acting on that recommendation, held a hearing for the purpose of determining whether Mrs. Heath's employment should be terminated. After the hearing, Mrs. Health's contract was cancelled.
Although the superintendent did not write a letter to the Board recommending cancellation of Mrs. Heath's contract, he did dictate into the minutes or orally inform the secretary and two members of the Board of his recommendation. We consider the form of the recommendation made by the superintendent not to be violative of the Code sections in question. There is no question that the purpose of the Code sections has been met; the Board and the superintendent acted in concert to cancel Mrs. Heath's employment contract. No error here. *Page 72 
The final issue concerns Mrs. Heath's contention that the Board's June 25, 1979 meeting violated (1) the double jeopardy clause of the fifth amendment to the United States Constitution, or (2) the principle of res judicata since the Board had determined on April 19, 1979 that Mrs. Heath had not committed an act of insubordination on April 10, 1979. Mrs. Heath is saying, as we understand her argument, that the Board's April 19, 1979 investigative session to determine the extent of her involvement in the April 10 incident placed her in jeopardy of losing her job, that the Board's subsequent inaction was tantamount to a finding that she was not guilty of insubordination, and that the Board's June 25, 1979 cancellation hearing placed her in jeopardy for a second time of losing her job. We find no merit in this contention.
The fifth amendment's prohibition against double jeopardy "applies only to criminal proceedings." Bridges v. Wixon,144 F.2d 927 (9th Cir. 1944), rev'd on other grounds, 326 U.S. 135,65 S.Ct. 1443, 89 L.Ed. 2103 (1945). The proceedings of the Talladega City Board of Education culminating in the cancellation of Mrs. Heath's contract with the city school system were not criminal in character. Moreover, the Board made no final determination on April 19, 1979 that Mrs. Heath was or was not guilty of insubordination in refusing to obey Mr. Harmon's order to return to her sixth period class and in telling her students that they could return to their classes without cleaning up at least part of the school lunchroom. In the absence of such a determination, the Board's June 27, 1979 decision to cancel Mrs. Heath's contract with the city school system was not barred by the principle of res judicata. SeeChicago, Rock Island Pacific Ry. v. Schendel, 270 U.S. 611,46 S.Ct. 420, 70 L.Ed. 757 (1926); United States v. Linetsky,533 F.2d 192 (5th Cir. 1976); see also State v. Brooks,255 Ala. 689, 53 So.2d 329 (1951). It follows that the Board's June 25, 1979 hearing to consider the cancellation of Mrs. Heath's contract and its subsequent cancellation were not barred by the fifth amendment's prohibition against double jeopardy or by the principle of res judicata.
The judgment of the circuit court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.