383 S.E.2d 839

Rose A. MECKLEY

v.

The KANAWHA COUNTY BOARD OF EDUCATION, et al.

No. 18008.

Supreme Court of Appeals of West Virginia.

July 21, 1989.

Hardway & Cometti, Joseph C. Cometti, Charleston, for Rose A. Meckley.

John O. Kiser, Charleston, for Kanawha County Bd. of Educ.

PER CURIAM:

This case is on appeal from an order of the Circuit Court of Kanawha County which affirmed the dismissal from employment of the appellant, Rose A. Meckley, a teacher, by the appellee, the Board of Education of Kanawha County ("Board"). The former superintendent of the Board, Robert E. Kittle, and the principal of the school where appellant taught, Phillip E. Jepson,

are also appellees. For reasons set forth in this opinion, we affirm the order of the circuit court.

The appellant was a teacher at Shoals Elementary School from 1976 to June 9, 1982, on which date she was suspended by the superintendent. During her last four years at the school, she taught third grade. Apparently, trouble between the appellant and school authorities began in May, 1981, when she refused to attend a PTA meeting. In September, 1981, she also failed to attend such meetings. During October, 1981, she failed to attend one faculty meeting and left another meeting that was in progress. During January, 1982, the appellant refused to meet in the principal's office with the parent of a student, J.B.[1] She met with Board officials in February, 1982 where her behavior was discussed. By a letter dated March 1, 1982, the superintendent directed her to attend PTA meetings, other meetings scheduled by the principal and meetings with parents. She failed to attend two faculty meetings in May, 1982 and one in June, 1982. For one of the May, 1982 meetings she took a "personal leave day." Apparently, a crisis at the school occurred when, on June 8, 1982, the appellant refused to give a report card to one student, J.B., yet gave the report cards to all other students. She refused the principal's direction to give the report card to him. On June 9, 1982, another official of the school board went to the school and requested the report card. She refused his request. Furthermore, the appellant refused to return the permanent record card of J.B. to the school office at the end of the 1981–82 school year.

Based upon the actions by the appellant, charges were brought against her in a let- ter by the superintendent to her dated June 18, 1982. The letter noted the superintendent's recommendation to the Board on June 17, 1982 that the appellant be dismissed from employment as an elementary teacher at Shoals Elementary School upon the grounds of "insubordination and willful neglect of duty."

Specifically, the following charges were made:

(1) You willfully and knowingly refused to attend PTA meetings although requested and directed to do so by your supervisor;

(2) You willfully and knowingly refused to attend faculty meetings;

(3) You refused to meet or confer with parents in the principal's office although requested to do so;

(4) You refused to issue a student report card to the parents of [J.B.] although requested to do so by your principal, the Assistant Superintendent for Administration, and the County Superintendent;

(5) You refused to return the permanent record card of [J.B.] to the principal's office as required by Board policy although requested to do so; and

(6) You have continually refused to cooperate or associate with parents, your students, or other staff members at Shoals Elementary School[.]

On July 28, 1982, a meeting of the Board was held on which date testimony was presented on behalf of the Board and the appellant. On September 20, 1982, the Board made its findings that the appellant was "guilty of insubordination and wilful neglect of duty" and that she should be dismissed as a teacher.[2]

---

**1.** The student will be referred to by his initials.

**2.** The Board made extensive findings including the following:

(6) Ms. Meckley failed to attend a PTA meeting at Shoals Elementary School in May, 1981 and did not seek to be excused from attending the meeting. Kanawha County Board of Education Policy III–B–1 states in pertinent part: 'Teachers are expected to attend parent-teacher association meetings unless excused by the principal.' Mr. Phillip Jepson, Principal of Shoals Elementary

School, discussed attendance at PTA meetings with Ms. Meckley and notified Mrs. Phyllis Ferrell, Assistant Superintendent for Elementary Schools by letter dated May 19, 1981 of Ms. Meckley's failure to attend the PTA meeting. A copy of that letter was sent to Ms. Meckley.

(7) Ms. Meckley failed to attend the PTA annual open house meeting on Tuesday evening, September 22, 1981 and did not seek to be excused from the meeting. Mr. Jepson notified Robert Humphreys, Executive Assist-

Although several issues are raised by the parties, one primary issue is dispositive of the case. Therefore, we will address that primary issue: Was the action taken by the Board in dismissing the appellant upon the grounds of insubordination and willful neglect of duty reasonable? [3] We conclude that the Board's action was reasonable.

W. Va. Code, 18A-2-8 [1985] provides that a board may suspend or dismiss a person in its employment for "insubordination ... or wilful neglect of duty[.]" However, as stated in syllabus point 3 of *Beverlin v. Board of Education*, 158 W.Va. 1067, 216 S.E.2d 554 (1975): "The

authority of a county board of education to dismiss a teacher under *W. Va. Code* 1931, 18A-2-8, as amended, must be based upon the just causes listed therein and must be exercised reasonably, not arbitrarily or capriciously." *See also Fox v. Board of Education*, 160 W.Va. 668, 236 S.E.2d 243 (1977).

In *Fox v. Board of Education, supra,* this Court found that a teacher who was dismissed under *W. Va. Code*, 18A-2-8 for wilful neglect of duty for missing a parent-teacher conference could be disciplined. Although the Court held discipline may lie, dismissal was too severe in that case. The Court did, however, state:

> (12) At the request of the Superintendent, Mr. Joe Beavers went to Shoals Elementary School on June 9, 1982 and asked Ms. Meckley to give [J.B.'s] report card to him. She refused to give up the card.
>
> (13) Ms. Meckley further refused to return the permanent record card of [J.B.] to the office of Shoals Elementary School at the end of the 1981–82 school year as required by Kanawha County Board of Education Policy VII–D–3.
>
> (14) Mr. Jepson asked Ms. Meckley to come to his office on January 30, 1982 to discuss [J.B.'s] second nine weeks grades with [J.B.'s] parents, [L.B and C.B]. Ms. Meckley refused to meet with the [B.'s] and Mr. Jepson in Mr. Jepson's office.

3. The Board asserts that the appellant's refusal to attend PTA and faculty meetings, standing alone, were proper grounds for dismissal.

The appellant argues that *W. Va. Code*, 18A-4-16 [1982] relating to the assignment of teachers to extracurricular assignments is applicable to her. Thus, she concludes, only if she had a separate contract of employment with the Board could she be required to attend such meetings.

The Board also relies upon its Policy III–B–1 which provides that teachers "are expected to attend parent-teacher association meetings unless excused by the principal." Furthermore, the board cites Policy V–D–3 which states teacher's "attendance at faculty meetings is required unless the teacher is excused by the principal."

As in *Fox v. Board of Education*, 160 W.Va. 668, 236 S.E.2d 243 (1977), we decline to address the issue as to whether the attendance of the appellant at all of the meetings referred to was mandatory. We conclude that the appellant's pattern of refusal to attend such meetings was sufficient to sustain a dismissal based upon insubordination and her continued absences from such meetings under the circumstances of this case were a willful neglect of duty.

---

ant for Elementary Schools by letter dated September 23, 1981 of Ms. Meckley's failure to attend the PTA meeting. A copy of that letter was sent to Ms. Meckley. Mr. Humphreys responded to Mr. Jepson by letter dated September 28, 1982 that the policy on PTA attendance would be followed and teachers were expected to attend PTA meetings. A copy of this letter was sent to Ms. Meckley.

(8) Ms. Meckley failed to attend a faculty meeting on October 27, 1981 and walked out of a faculty meeting that was in progress on October 29, 1981.

(9) A conference was held on February 5, 1981 at the office of Superintendent Kittle, which was attended by Superintendent Kittle, Mr. Humphreys, Mr. Jepson, Ms. Meckley and her representative, Jim Morris to discuss concerns about Ms. Meckley's behavior and actions at Shoals Elementary School, including her attendance at PTA, faculty and other meetings. By letter dated March 1, 1982 to Ms. Meckley, Superintendent Kittle pointed out areas of concern that, if not changed, could be considered insubordinate and ultimately cause for dismissal. Superintendent Kittle's letter directed Ms. Meckley to attend and participate in PTA, faculty and other meetings scheduled by Mr. Jepson, including meetings with parents.

(10) Ms. Meckley failed to attend faculty meetings on May 18, 1982, May 25, 1982, and June 7, 1982. She admittedly took a personal leave day for the express purpose of avoiding required attendance at one of the May faculty meetings.

(11) On June 8, 1982, Ms. Meckley did not give a report card to [J.B.]. She did provide a report card to all other students in her class. After learning of the situation, Mr. Jepson went to Ms. Meckley's classroom and asked her to give the report card to him. She refused to do so. Mr. Jepson contacted Superintendent Kittle by telephone and by letter dated June 9, 1982 and informed him of Ms. Meckley's actions.

We do not attempt to formulate a comprehensive definition of 'wilful neglect of duty' that would reasonably support a teacher's permanent dismissal. A continuing course of lesser infractions may well, when viewed in the aggregate, be sufficient. And we may envision a single act of malfeasance, whereby severe consequences are generated, that merits a dismissal.

*Fox v. Board of Education*, 160 W.Va. at 672, 236 S.E.2d at 246.

Other courts have upheld dismissals for insubordination for acts similar to that committed by the appellant in this case. *Johnson v. United School District Joint School Board*, 201 Pa.Super. 375, 191 A.2d 897 (1963) (wherein a "temporary" teacher was directed to attend an open house where parents talk with teachers regarding students, yet refused to attend); *Gilbertson v. McAlister*, 403 F.Supp. 1 (D.Conn. 1975) (wherein, among other acts, a teacher refused to comply with orders of a principal). *See generally* annotation, *Dismissal of Public School Teacher Because of Unauthorized Absence or Tardiness*, 78 A.L.R.3d 117 (1977 and Supp.1988).

■ Certainly, the actions of the appellant, collectively, in this case are such that her dismissal by the Board was reasonable and proper. A review of the record reveals a teacher who was a disruptive influence at the school and one who essentially made her own rules and then followed those rules. She pursued a continuing course of infractions, which, when viewed in the aggregate, was sufficient for dismissal. Although the charges related to both insubordination and willful neglect of duty, insubordination was the primary ground giving cause for dismissal. In most instances, she was directed to take action, either attend certain meetings or give a student a report card or return a permanent record card, yet refused to do so. We, therefore, consider those continuing acts of insubordination the most serious.

The beginning of the controversy regarding the withholding of the report card and permanent record card began in January, 1982. In that month, the appellant issued report cards which covered the second nine-week period of the 1981–82 school year. One of the students in the appellant's class received two "U's," representing unsatisfactory performances, one in math and one in spelling. The student's parents requested a meeting with the appellant and the principal. The principal met with the student's parents, but the appellant refused to do so, despite repeated requests by the principal that the appellant attend the meeting.

The principal then met with the appellant on three separate occasions subsequent to his meeting with the student's parents, to discuss the appellant's grading policy. The principal determined that the appellant's grading policy was not adequate. Specifically, the principal was concerned with the fact that only four grades in spelling were included in the grade report. One of the test grades represented forty percent of the nine-week grade, and it was administered two days after the nine-week period was over, but it covered material that was taught during the nine-week period in question. Furthermore, the principal determined that the skills covered in this test were not part of the skills covered for third grade spelling in the Board's program of studies. Removing this test score from the student's grade would have given him an "S" in spelling, representing a satisfactory performance.

Similarly, the principal was concerned with the appellant's computation of the student's math grade, which represented only three grades. The principal determined that the student's daily work should have been taken into account in computing his math grade. Moreover, the principal testified that, according to the "Handbook for Elementary Student Evaluation," a minimum of *nine* grades is required for each nine-week grading period. Based upon his determinations, the principal gave the appellant the opportunity to reevaluate the grades, taking into consideration the daily performance of the students. The appellant refused to reevaluate the grades, so the principal changed the student's grades in math and spelling from "U" to "S." The

principal did not reevaluate nor change the grades of any other student.

On June 8, 1982, the appellant issued report cards to the students in her class, but did not issue one to the student whose grades were changed. She also retained the student's permanent record card. Her contention was that her conduct was necessary to preserve a grievance she filed.

The appellant filed the grievance alleging that the principal's action, changing the student's grades, violated academic freedom and her right and responsibility to assess a pupil's progress. That grievance was denied at every level at which it was pursued.[4]

■ The teacher may have had a legitimate concern regarding the changing of the grade by the principal. But she ultimately chose the wrong course to express those concerns.[5]

In these circumstances, therefore, the principal's actions were not justification for the withholding of the report card or permanent record card. Obviously, the appellant was entitled to file a grievance if she believed the actions of the principal were improper. However, the appellant should not have utilized self-help by withholding the report card and the permanent record card as her resolution of the impasse.

As stated above, the record in this case reveals a continuing course of infractions by the appellant. Her conduct as a teacher gave rise to serious concerns regarding her duties as a teacher to her students, notwithstanding her obligations to the school authorities. Clearly, the facts reveal that the action of the Board in dismissing the appellant was reasonable and was neither arbitrary nor capricious.

Based upon all of the above, we affirm the order of the Circuit Court of Kanawha County.

Affirmed.

WORKMAN, J., deeming herself disqualified, did not participate in the consideration or decision of this case.

---

**4.** The appellant filed another grievance, which was also denied, wherein she sought to remove certain letters from her personnel file relating to her attendance at PTA meetings and directing her to attend such meetings.

**5.** Furthermore, the board contends that the refusal to issue the report card and return the permanent record card, standing alone, were sufficient to dismiss the teacher. Again, we focus on the appellant's actions, collectively, holding that her dismissal was proper.

The appellant argues that her academic freedom under the first amendment to the *United States Constitution* and article III, section 7 of the *West Virginia Constitution* was violated when the principal changed the grades. She cites *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). The board asserts that the principal had the authority to change the grades under *Code,* 18A–2–9 and Board Policy VI–H–12. An issue similar to this occurred in the case of *Parate v. Isibor,* 868 F.2d 821 (6th Cir.1989). In that case a nontenured university professor was ordered to change a student's grade. Although the court held that if the professor was discharged because of the professor's exercise of his first amendment rights to academic freedom by being ordered to change the grade, the university officials could have administratively changed the grade *themselves.* The constitutional violation occurred because of the university officials act of ordering the professor to change the grade, thus precluding him from communicating his personal evaluation of the student. In short, the university officials chose a means to accomplish their supervisory goals that was unduly burdensome and constitutionally infirm. *Cf. Hillis v. Stephen F. Austin State University,* 665 F.2d 547 (5th Cir.), *cert. denied* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (no constitutional violation found where a grade was changed without ordering the professor to change the grade). In the case before us, the appellant was not ordered to change the grades. Rather, the principal merely gave the appellant the opportunity to reevaluate the grades. We conclude that under the circumstances of this case, there were no constitutional implications.

We express no opinion on whether the assignment of grades in public schools, as opposed to in colleges and universities, is included within academic freedom. *Cf. Arons v. Society of Mary,* No. CA 9494 (Ohio Ct.App.1986) (Westlaw 1986 WL 6328) (assignment of high school grades not within academic freedom).