387 S.E.2d 529

Charles T. SEXTON

v.

MARSHALL UNIVERSITY.

No. 19088.

Supreme Court of Appeals
of West Virginia.

Nov. 21, 1989.

---

Anthony F. Serreno, Sp. Asst. Atty. Gen., West Virginia Bd. of Regents, Charleston, for Marshall University.

W.J. Arceneaux, III, McIntyre, Haviland and Jordan, Charleston, for Charles T. Sexton.

PER CURIAM:

Marshall University (the University) appeals an order of the Circuit Court of Kanawha County contending that the circuit court erred in reversing the decision of the Educational Employees Grievance Board (EEGB) which upheld the discharge of Charles T. Sexton for gross insubordination. We agree, and we reverse the order of the circuit court.

Mr. Sexton was employed by the University as an electrician for approximately ten years. In a memorandum to his supervisor, Clifford Curry, dated February 2, 1988, Mr. Sexton stated that he had learned one of his coworkers was under consideration for the position of assistant supervisor of housing maintenance. Mr. Sexton listed the persons whom he believed were more qualified for the position and provided a summary of their qualifications. The name of the coworker who was allegedly being considered for the position was at the bottom of the list.

By memorandum dated February 3, 1988, Mr. Curry expressed his disapproval of Mr. Sexton's memorandum and warned him to refrain from "spreading false rumors." By letter dated February 5, 1988, Mr. Sexton replied that if Mr. Curry's memorandum was a written warning, then Mr. Sexton's letter should be considered as a request for a Level I conference pursuant to the educational employees grievance procedure.[1] That same day, Mr. Sexton filed a grievance. Mr. Curry responded by stating that his February 3, 1988 letter was a "reaffirmation of a previous warning that [Mr. Sexton] had been given verbally" and in writing.

Mr. Curry scheduled a meeting, to which Mr. Sexton and his coworkers were invited, for February 16, 1988, apparently to discuss procedures for filling the new job position. At the beginning of the meeting, Mr. Sexton stood up and began reciting the definition of reprisal from W.Va.Code, 18–29–2(p). Raymond Welty, Acting Associate Vice President for Administration, asked Mr. Sexton to sit down so that the meeting could continue. Mr. Sexton, in a louder voice, continued to read the definition of reprisal. Mr. Welty again asked Mr. Sexton to sit down, but he refused. Mr. Welty cancelled the meeting and directed those attending to return to work.

In a letter dated February 17, 1988, Mr. Curry advised Mr. Sexton that he was being fired as a result of his actions at the meeting.[2] Mr. Sexton requested a pretermination hearing and filed a discharge grievance with the EEGB.

After the pretermination hearing, the president of the University advised Mr. Sexton that his discharge had been upheld. A Level IV grievance hearing was conducted, and on May 25, 1988, the hearing examiner issued a final decision upholding Mr. Sexton's discharge for gross insubor-

---

1. A Level I conference is "with the [grievant's] immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought." W.Va.Code, 18–29–4(a)(1) (1985).

2. Mr. Sexton was terminated for the following reasons: (1) gross insubordination; (2) disobe-

dience; (3) refusal to comply with institutional rules; (4) willful misconduct; (5) knowingly making false or malicious statements against other employees, supervisors, or officials of the university with intent to harm or destroy the reputation of those persons; and (6) discredit to the university.

dination. By final order dated March 23, 1989, the circuit court reversed the decision of the hearing examiner. It is from this order that the University appeals.

The University's principal contention on appeal is that the circuit court substituted its findings of fact for those of the hearing examiner and failed to follow the standard of review articulated in W.Va.Code, 18–29–7. Mr. Sexton asserts that the circuit court properly reversed the hearing examiner's decision as a matter of law.

Upon judicial review of a contested case under W.Va.Code, 18–29–7, the circuit court's ability to reverse the hearing examiner's decision is limited to five grounds: "that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

We recently explained in *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), that the limited right of judicial review under W.Va.Code, 18–29–7, is substantially the same as the standard of review set forth in the Administrative Procedure Act, W.Va.Code, 29A–5–4, the scope of which we stated in Syllabus Point 2 of *Shepherdstown Volunteer Fire Dep't v. State ex rel. State Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983):

"Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative

findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' "

See also Syllabus Point 1, *St. Mary's Hosp. v. State Health Planning & Dev. Agency*, 178 W.Va. 792, 364 S.E.2d 805 (1987); Syllabus Point 1, *Johnson v. State Dep't of Motor Vehicles*, 173 W.Va. 565, 318 S.E.2d 616 (1984). We also pointed out in *Scalia* that we have traditionally held that evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong[3] and made this conclusion in Syllabus Point 1:

"A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

In this case, the circuit court overturned the hearing examiner's decision based on its finding that the February 16, 1988 meeting was a grievance proceeding for Mr. Sexton. The court concluded that allowing disruptive conduct at such a hearing to "constitute grounds for a subsequent discharge creates a chilling effect on the administrative grievance process and upon the employee's exercise of his grievance right."

We believe the circuit court mischaracterized the February 16, 1988 meeting as a grievance hearing. Mr. Sexton had requested a hearing for a Level I grievance on the University's criticism of his February 2, 1988 memorandum. This procedure involves a conference "with the immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought." W.Va.Code, 18–29–

---

**3.** *E.g., West Virginia Dep't of Health v. Mathison*, 171 W.Va. 693, 301 S.E.2d 783 (1983); *Vosberg v. Civil Serv. Comm'n of West Virginia*, 166 W.Va. 488, 275 S.E.2d 640 (1981).

4(a)(1). It does not involve the presence of other persons. Indeed, the attendance of Mr. Sexton's coworkers is what led the hearing examiner to conclude that the meeting was an informational meeting to explain the filling of the new position rather than a grievance proceeding. In failing to recognize this distinction, the circuit court ignored the statutory grievance level description.

Furthermore, the record indicates that Mr. Sexton was familiar with the statutory grievance procedures. In an agreement dated April 14, 1987, the University settled two grievances Mr. Sexton had previously filed with the EEGB. In addition, on December 14, 1987, Mr. Sexton reached a compromise with the University on five other grievances. A Level IV hearing was conducted on the same day on another grievance involving a five-day suspension for unauthorized absence from work.

It is clear from the record that the circuit court substituted its interpretation of the facts and failed to apply the appropriate standard of review set forth in W.Va.Code, 18–29–7. For these reasons, the judgment of the circuit court is reversed, and the final order of the hearing examiner is affirmed.

Reversed.