569 S.E.2d 456

Joy G. BUTTS, Petitioner Below, Appellant

v.

HIGHER EDUCATION INTERIM GOVERNING BOARD/SHEPHERD COLLEGE, Respondent Below, Appellee

No. 30120.

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2002.

Decided June 17, 2002.

Concurring Opinion of Justice Maynard July 2, 2002.

Lawrence M. Schultz, Esq., Burke, Schultz & Harman, Martinsburg, West Virginia, Attorneys for Appellant.

K. Alan Perdue, Esq., Shepherd College Counsel, Shepherdstown, West Virginia, Attorney for Appellee.

## PER CURIAM:

This is an appeal by Joy Butts, an associate professor at Shepherd College, from an order of the Circuit Court of Jefferson County which affirmed and upheld a reprimand issued by her employer Shepherd College. On appeal, the appellant claims that she was improperly reprimanded and that the reprimand should be removed from her record. After reviewing the facts and issues presented, the Court agrees.

### I.

### FACTS

The appellant, Joy Butts, was, and is, a tenured associate professor at Shepherd College in Shepherdstown, West Virginia. Ethel Cameron was, and is, the coordinator of the appellant's program and the appellant's supervisor.

During the Fall 1999 semester of Shepherd College, Ms. Cameron asked the appellant, and other faculty members who were subject to her supervision, to provide her with the grades of their students so that she could resolve various questions relating to the program. The appellant did not comply with Ms. Cameron's request for the grades because she believed that releasing the grades to Ms. Cameron would violate the Shepherd College privacy policy contained in the 1999–2000 Shepherd College Handbook, a policy which, in relevant part, provided:

C. Prior written consent of the students concerned will be obtained before releasing information from student records to individuals other than the students referred to in those records. Exceptions to this policy are outlined below or are in other parts of this publication.

1. Members of the faculty may have access to academic records and files for internal educational purposes.

\* \* \* \* \* \*

The policy, however, further provided:

5. The Office of the Registrar is charged with the responsibility of releasing grades and grade point averages. No other department or division of the College may release grades without express (written) permission of the students. . . .

In the present appeal, the appellant acknowledges that the policy allowed Ms. Cameron access to the grades, but argues that she believed, and believes, that the policy did not authorize or permit her, rather than the Office of the Registrar, to release those grades. She also argues that her release of the grades to Ms. Cameron might have violated federal law which applied to the operation of Shepherd College.

Following the failure of the appellant to provide the grades to Ms. Cameron, reprimands were issued against her on October 19, 1999, and February 9, 2000.

The appellant filed a grievance over the issuance of the reprimands, and the matter was jointly waived to Level IV of the applicable grievance procedure, where an administrative law judge conducted a hearing on October 6, 2000. After that hearing, the administrative law judge, on October 31, 2000, denied the appellant's request for relief and, in effect, affirmed the reprimands. The administrative law judge found that under various administrative decisions, the "willful failure or refusal to obey reasonable orders of a superior entitled to give such order" constituted "insubordination" by an employee and that such insubordination justified a reprimand. While recognizing that the appellant believed that Ms. Cameron's requests were improper, the administrative law judge

held that an employee's belief that management's decisions are incorrect, absent a threat to the employee's health or safety, does not confer upon him the right to ignore or disregard a supervisor's order, rule or directive.

The appellant appealed the administrative decision to the Circuit Court of Jefferson County, and by order entered on May 3, 2001, the court affirmed the administrative ruling. The court stated:

The Court recognizes that Petitioner may have a good faith belief that the directive from Ms. Cameron to turn over Petitioner's students' grades to Ms. Cameron, if followed, would result in Petitioner's violating federal and/or state student privacy laws. But this Court agrees with Judge Keller [the administrative law judge] that Petitioner's readings of these privacy laws is erroneous. The record amply demonstrates that Ms. Cameron, as a faculty member, was entitled to receive the grades and that her intended use of those grades was for "legitimate educational purposes." The Court agrees with Judge Keller's analysis that Petitioner's willful refusal to comply with her supervisor's directive was insubordinate.

In the present appeal, the appellant claims that, in light of the fact that the policy of Shepherd College relating to the release of grades contained in the student handbook, a policy which permitted only the Registrar to release such grades, her refusal to release the grades to Ms. Cameron did not constitute insubordinate misconduct which would support a reprimand.

## II.

### STANDARD OF REVIEW

The present case involves an administrative grievance prosecuted by a higher education, the appeal of which was heretofore governed by the provisions of W. Va.Code 18–29–1, *et seq.*

In Syllabus Point 1 of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court indicated that: "A final order of the hearing

examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

The Court has also indicated that when it examines the decision of a circuit court in such cases, it employs the same standard as that by which the circuit court reviews the decision of the administrative law judge. *Martin v. Randolph County Board of Education*, 195 W.Va. 297, 465 S.E.2d 399 (1995). In the same case, the Court indicated that it applied a *de novo* standard to the circuit court's conclusions of law and application of the law to the facts.

## III.

### DISCUSSION

Case law in West Virginia rather clearly recognizes that insubordination may legitimately form the basis for imposing sanctions upon college or public school employees. *Trimble v. WV Board of Directors*, 209 W.Va. 420, 549 S.E.2d 294 (2001); *Sexton v. Marshall University*, 182 W.Va. 294, 387 S.E.2d 529 (1989); and *Meckley v. Kanawha County Board of Education*, 181 W.Va. 657, 383 S.E.2d 839 (1989). However, case law which defines "insubordination" in the college or public school context is rather meager. In *Beverlin v. Board of Education of the County of Lewis*, 158 W.Va. 1067, 216 S.E.2d 554 (1975), the Court did hold that the failure of a public school teacher to report to work on a date ordered by his school board did not constitute insubordination which would support the imposition of a sanction where the teacher had a valid reason for not reporting, where he made some attempt, although abortive, to contact his principal, and where no harm resulted to his students as a result of his failure to report.

An annotation on the *Beverlin* case appears at 78 A.L.R.3d 83 (1977). That annotation examines many cases, in many jurisdictions, dealing with what constitutes "insubordination" for the purposes of imposing a sanction upon a public school teacher. It states:

While the courts' definitions of "insubordination" in teacher dismissal cases have varied somewhat from one jurisdiction to another, it seems fairly clear that the term at least includes, and perhaps requires, a wilful disobedience of, or refusal to obey, a reasonable and valid rule, regulation, or order issued by the school board or by an administrative superior.

Annotation, *Dismissal of Teacher—"Insubordination"*, 78 A.L.R.3d § 2(a) (1977).

This, in effect, indicates that for there to be "insubordination," the following must be present: (a) an employee must refuse to obey an order (or rule or regulation); (b) the refusal must be wilful; and (c) the order (or rule or regulation) must be reasonable and valid. This proposition is supported by the many cases cited in the annotation.

Both the appellant and the appellee in the present case agree that insubordination, as that term is used by the employer in the present proceeding, consists of "willful failure or refusal to obey reasonable orders of a superior entitled to give such order." This is also essentially the definition which the West Virginia Education and State Employee Grievance Board has employed in previous cases. *Conner v. Barbour County Board of Education*, Docket No. 94–01–394 (Jan. 31, 1995), and *Riddle v. Board of Directors, Southern West Virginia Community College*, Docket No. 93–BOD–309 (May 31, 1994).

In the present case, there is no question that the appellant refused to obey an order which her supervisor gave. In light of this, the Court believes that the real questions presented are first whether the order given was a "reasonable order" which her supervisor was entitled to give, or in the language of the annotation quoted a "valid and reasonable" order, and secondly whether the appellant's refusal to obey was wilful.

This Court believes that common sense dictates that if an employer's policy forbids certain conduct, an order contrary to that policy, that is to say, an order which directs an employee to engage in the forbidden conduct, is an unreasonable order or an invalid order.

The appellant in the present proceeding claims that she believed that the order given by her supervisor was an unreasonable order in that she believed that her release of the grades to the supervisor, Ms. Cameron, would violate Shepherd College's privacy policy, as well as privacy requirements imposed upon the College by federal law. The appellant specifically points out that Shepherd College's privacy policy, as stated in its 1999–2000 Shepherd College Handbook, generally stated that: "Prior written consent of the students concerned will be obtained before releasing information from student records to individuals other than the students referred to in those records." There were certain exceptions stated to that policy. One provided that members of the faculty had access to academic records and files for internal educational purposes. Another exception, however, stated that no department or division, other than the office of the Registrar, could release grades without express permission of the students.

The appellant, in effect, asserts that compliance with the order given her would have required her to violate a specific college policy. Interestingly, both the administrative law judge and the circuit court suggested that the appellant's belief may have been a good faith belief, and, in effect, suggested that the evidence supported the belief.

In reading the policy in question, the Court believes that reasonable minds may differ over its meaning. Section C(5) of the policy does state:

The Office of the Registrar is charged with the responsibility of releasing grades and grade point averages. No other department or division of the College may release grades without express (written) permission of the students.

On the one hand, it may be argued that the request involved in the present case did not involve the "department or division" "release" of grades. On the other hand, the Court believes that reasonable minds might conclude that the appellant was a part of a department or division, and since the obvious purpose of the policy was to restrict the dissemination of grades for privacy reasons, the action which the appellant was required to take would have been violative of the policy. In a word, whether the order in question was reasonable and valid is open to dispute.

As has been previously stated, for there to be insubordination, the consensus of the precedent seems to indicate that not only must there be a refusal to obey an order, but the refusal must be wilful.

Although the cases are not clear as to what constitutes "wilfulness," the cases seem to suggest that for a refusal to obey to be "wilful," the motivation for the disobedience must be contumaciousness or a defiance of, or contempt for authority, rather than a legitimate disagreement over the legal propriety or reasonableness of an order. *See* Annotation, *Dismissal of Teacher—"Insubordination",* 73 A.L.R.3d § 3 (1977).

The Court believes that the facts of the present case show a dispute over the reasonableness of the order in question, rather than wilfulness. Plainly, there was a policy which stated that the prior written consent of a student was required before his grades could be released to someone other than the student himself. This policy arguably would, on its face, prohibit the release of the grades of a student by the appellant to her superior. Although there were exceptions set forth in the policy, the exceptions were inherently ambiguous. One paragraph of the exceptions stated that a member of the faculty could have access to the academic records and files for educational purposes, but another paragraph stated that the office of the Registrar was responsible for releasing grades and that no other department or division, and inferentially, no member of a department or division, could release grades without the express written permission of the students. This privacy policy was issued in conjunction with federal law which guarantees the privacy of students and places limitations upon the release of student grades. This Court believes, and seemingly the administrative law judge and the circuit court, in noting that the appellant may have acted on a good faith belief, concluded, that the appellant interpreted the policy and the law as rendering it improper and illegal for her to comply with her supervisor's request and, in effect, concluded that the order was unreasonable and that her supervisor was without authority to make it.

Under the circumstances, where there was a factual basis for the appellant's alleged belief that the order was unreasonable, and where there is evidence that she refused to obey in the belief the order was unreasonable, this Court believes that the act of the appellant in refusing to obey the supervisor's order was not contumacious and did not constitute the type of "wilful" refusal to obey which is inherent in the definition of "insubordination." In a word, under the facts of this case, the appellant's refusal to obey a superior's order, based on a good faith belief that the order violated a law, regulation, or policy, was not a wilful refusal to obey and was not insubordination.

As a consequence, this Court believes that there was not an appropriate basis for the imposition of a reprimand upon the appellant, and this Court further believes that the reprimand should be expunged from the appellant's personnel record.[1]

For the reasons stated, the judgment of the Circuit Court of Jefferson County is reversed, and this case is remanded with directions that the reprimand in question be expunged from the appellant's personnel record.

Reversed and remanded with directions.

MAYNARD, Justice, dissenting:

(Filed July 2, 2002)

I respectfully dissent from the majority opinion because I believe that Professor Butts' willful refusal to comply with a reasonable request from her supervisor constitutes insubordination.

"Insubordination" is defined as "a refusal to obey an order that a superior officer is authorized to give." Black's Law Dictionary 802 (7th ed.1999). *See also Nelson v. Los Angeles County,* 362 U.S. 1, 7, 80 S.Ct. 527, 531, 4 L.Ed.2d 494, 499 (1960) (concluding, in case where county social workers were terminated for refusing to answer security questions put to them by congressional subcommittee, that the employees were discharged based "solely on employee insubordination

---

1. Having concluded that the appellant's refusal to obey was not wilful, given the nature of Shepherd College's privacy policy, the Court does not feel that it is necessary to discuss the appellant's claim that her obedience to the order would have violated federal law relating to student privacy.

for failure to give information which we have held that the State has a legitimate interest in securing" (citations omitted)); *Heath v. Alabama State Tenure Commission*, 401 So.2d 68, 70 (Ala.Civ.App.1981) (commenting that "[i]nsubordination has ... been defined as the refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed so long as such order is reasonably related to the duties of the employee" (citations omitted)); *Morris v. Clarksville–Montgomery County Consol. Bd. of Educ.*, 867 S.W.2d 324, 327 (Tenn.Ct.App. 1993) (describing "insubordination" as "disobedience to constituted authority; refusal to obey some order which a superior officer is entitled to give and have obeyed" (citing Black's Law Dictionary, fourth edition)). In light of the foregoing definition, it is clear that this case presents two simple questions: (1) whether Ethel Cameron, the appellant's supervisor, was authorized to give the order; and (2) whether the appellant refused to obey the order. There is no dispute that the appellant refused to obey the order. Therefore, my discussion is directed only to the first question, whether Ethel Cameron was authorized to request student grades from her subordinates.

Unlike the majority, I believe Ms. Cameron was absolutely authorized to give the order. The 1999–2000 Shepherd College Handbook clearly states that "[m]embers of the faculty may have access to academic records and files for internal educational purposes." The majority does not question Ms. Cameron's reason for requesting copies of student grades. In fact, the majority states that Ms. Cameron requested the grades so she "could resolve various questions relating to the program." Instead, the majority finds that this unambiguous directive conflicts with another provision in the policy specifying that only the registrar could release grades and grade point averages without written permission from the students. Finding that this conflict makes the faculty access policy ambiguous, the majority then holds that the appellant's willful failure to comply with her supervisor's directive is, therefore, not insubordination.

The holding in this case is actually dependent upon what is meant by the phrase "releasing grades." The privacy policy in question in this case grants sole authority to the Registrar to *release* grades and grade point averages. For ease of discussion, I will refer to this provision as the "Registrar provision." The college explains that it has traditionally applied the Registrar provision only to the release of grades to parents and other third persons such as employers and graduate schools. It has not applied the provision to the internal *sharing* of grades and grade point averages among its staff for educational purposes. When grades are "released" externally, authenticity is achieved through certification methods routinely exercised by the Registrar. Thus, the clear purpose of the Registrar provision is simply to inform students that transmission of their grades to third persons or agencies must come from the Registrar. It is clearly *not* the purpose of the Registrar provision to inform members of the faculty that they must obtain official transcripts of student grades through the college Registrar in order to perform necessary functions such as counseling students or determining program development.[1] Thus, the college's explanation of its policy makes perfect sense to me. The majority, nonetheless, finds that reasonable minds may differ over the meaning of the policy.

Furthermore, the college instituted disciplinary sanctions by simply reprimanding the appellant. By so doing, it appears that the college has laid the foundation for "progressive disciplinary sanctions in an attempt to correct the teacher's insubordinate conduct" as was previously prescribed by this Court in Syllabus Point 6 of *Trimble v. West Virginia Bd. of Directors*, 209 W.Va. 420, 549 S.E.2d 294 (2001). I also believe the disciplinary action taken in this case matched the infraction, and, therefore, meets the requirement set forth in Syllabus Point 5 of *Trimble*.

Once again, the majority insists on micromanaging higher education disciplinary decisions. Decisions such as this make it nearly impossible for the people who run our higher institutions of learning to do their jobs. I

---

**1.** As stated above, there has been no challenge to Ms. Cameron's motives for seeking student grades.

cannot say it better than Justice Neely said it in his dissent to *Beverlin v. Board of Ed. of Lewis County,* 158 W.Va. 1067, 1076, 216 S.E.2d 554, 559 (1975). Therefore, I quote:

The majority's opinion is yet one more example of the increasing tendency of courts to undermine the ability of those charged with responsibility to discharge their duties in a competent manner. The increasing substitution of court judgment for the judgments of all other decision-makers causes administration to become increasingly chaotic because of paralysis prompted by a surplusage of procedural and substantive due process which leads not to justice but to total incompetence and inability to govern.

For the foregoing reasons, I respectfully dissent and accordingly would affirm the order of the circuit court. I am authorized to state that Chief Justice Davis joins me in this dissent.