# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Bradley Stephens,**
**Petitioner Below, Petitioner**

vs) **No. 14-0131** (Kanawha County 12-AA-105)

**The Board of Education of the County**
**of Wayne, Respondent Below, Respondent**

**FILED**

January 12, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Bradley Stephens, by counsel John Everett Roush, appeals the Circuit Court of Kanawha County's January 9, 2014, order affirming the August 10, 2012, decision of the Administrative Law Judge ("ALJ") for the West Virginia Public Employees Grievance Board. Respondent Wayne County Board of Education ("Board"), by counsel David Lycan, filed a response. On appeal, petitioner alleges that his termination was arbitrary and capricious and that he was entitled to an evaluation and opportunity to improve prior to termination.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent previously employed petitioner as a bus operator. In August of 2011, Respondent's Superintendent, Gary Adkins, suspended petitioner, without pay, for an incident that occurred on August 11, 2011. Petitioner picked up children from Kellogg Elementary on the date in question, then pulled out into the street in the eastbound lane, crossed a double yellow line, drove into oncoming traffic in the westbound lane to pass a waiting line of traffic in the eastbound lane, and finally merged back into the eastbound lane when able. Respondent's Transportation Director, Patrick Fluty, met with petitioner the day after the incident, during which petitioner admitted that he crossed a double yellow line and drove on the wrong side of the street for what he estimated to be half a block. Petitioner then met with the superintendent that same day and again admitted to this action. Thereafter, the superintendent recommended petitioner's employment be terminated based upon the driving violations that occurred on the day in question, in addition to a number of other past driving violations.

The Board held a special meeting on November 19, 2011, and conducted a full hearing in regard to the superintendent's recommendation. The Board unanimously voted to terminate petitioner's employment. That same month, petitioner filed a Level III grievance directly with the West Virginia Public Employees Grievance Board. Petitioner claimed he was the victim of

1

discrimination for his religious views in that he was harassed, reprimanded, and ultimately terminated for actions that were tolerated from other drivers. In February of 2012, the ALJ conducted a Level III hearing, during which respondent introduced into evidence video footage from another school bus that captured the incident in question. The footage showed that vehicles were travelling through the westbound lane at the time that petitioner crossed the double yellow line to travel in that lane. During the hearing, petitioner acknowledged that no emergency existed to cause his actions. Transportation Director Fluty also testified that petitioner committed a number of other driving violations prior to August of 2011 that resulted in the following: (1) petitioner receiving two separate letters of reprimand; (2) petitioner's three-day suspension for three days after he did not allow a student to sit down before engaging the bus, resulting in a head injury to the student and damage to a bus window; and (3) petitioner's placement on an assistance plan as early as 2009. Directory Fluty further testified that he has received several complaints regarding petitioner's bus operation from various principals, school administrators, teachers, parents, students, and other individuals with no direct association with the school system. In fact, he testified that he received more complaints about petitioner than any other bus operator.

In August of 2012, the ALJ rendered its Level III decision, and found that respondent was within its discretionary authority to terminate petitioner's employment based on his improper and illegal bus operation on August 11, 2011, and his other instances of improper bus operation. The ALJ also found that petitioner failed to establish that respondent acted in an unreasonable, discriminatory, or arbitrary and capricious manner in terminating petitioner's employment. Petitioner thereafter appealed the decision to the circuit court. On January 9, 2014, the circuit court entered an order affirming the ALJ's decision. It is from this order that petitioner appeals.

We have previously established the following standard of review:

> "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syllabus Point 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Syl. Pt. 1, *Darby v. Kanawha County Bd. of Educ.*, 227 W.Va. 525, 711 S.E.2d 595 (2011). Upon our review, the Court finds no error in the circuit court decision below. To begin, the Court finds no merit in petitioner's argument that he was discriminated against because of his religious beliefs. While it may be true that petitioner was told he could not play gospel music on his bus, the Court declines to find this was evidence of discrimination, especially in light of petitioner's failure to show that he was treated differently from similarly situated bus operators.

Pursuant to West Virginia Code § 6C-2-2(d), "'[d]iscrimination' means any differences

in the treatment of similarly situated employees, unless the differences are related to the actual job responsibilities of the employees or are agreed to in writing by the employees." Petitioner argues that he presented evidence that several other bus drivers have crossed double yellow lines but were not terminated for such action, and he also argues that he presented evidence of many other bus operators committing widespread infractions, such as smoking on and around buses, that went unpunished. However, the Court notes that petitioner has failed to establish that employees in a situation similar to his were treated differently, as he presented no evidence of an employee with a disciplinary history as extensive as his own retaining a position as a bus operator. As the circuit court found in its order affirming the ALJ's decision, petitioner had a lengthy history of reprimand for serious infractions dating back to 2009.

When Director Fluty took the position in 2009, petitioner was already under a plan of improvement implemented by the prior director. From 2009 until the incident in question in August of 2011, petitioner was subject to a letter of reprimand for a similar incident in which he attempted to pass a line of waiting buses and struck a sign, was subject to a second letter of reprimand for other driving violations, and was previously suspended for three days when a student injured his head and broke a bus window after petitioner pulled off before the child was seated. As such, petitioner's comparisons of his situation to that of other bus operators who may have committed one similar infraction are unpersuasive, as the true comparison of a similarly situated employee would be one with the same extensive history of discipline as petitioner. For these reasons, the circuit court did not err in denying petitioner's appeal on the ground that the ALJ erred in finding that he was not subject to discrimination.

Moreover, the Court finds no merit in petitioner's argument that he was entitled to an evaluation and opportunity to improve prior to termination. Simply put, petitioner had received multiple opportunities to improve beginning as early as 2009, yet continued to commit driving infractions necessitating reprimand. Pursuant to West Virginia Code § 18A-2-8(a), "a [county school] board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge." While petitioner argues that the August of 2011 incident constituted only unsatisfactory performance and that West Virginia Code § 18A-2-8(b) requires the charge to have been made "as the result of an employee performance evaluation," the Court disagrees. Conversely, the circuit court was correct in finding that respondent established both insubordination and willful neglect of duty on petitioner's part.

We have previously stated that insubordination "includes, and perhaps requires, a wil[l]ful disobedience of, or refusal to obey, a reasonable and valid rule, regulation, or order issued by the school board or by an administrative superior." *Butts v. Higher Educ. Interim Governing Bd./Shepherd College*, 212 W.Va. 209, 212, 569 S.E.2d 456, 459 (2002). Additionally, in discussing willful neglect of duty, we have stated that "[i]t encompasses something more serious than 'incompetence,'" and that it "ordinarily imports a knowing and intentional act, as distinguished from a negligent act." *Board of Educ. of County of Gilmer v. Chaddock*, 183 W.Va. 638, 640, 398 S.E.2d 120, 122 (1990). As noted above, petitioner previously received a letter of reprimand after he tried to pass a line of waiting traffic and struck a road sign. Director Fluty confirmed that in the letter, he told petitioner that failure to conform

to safe operating procedures and policies in the future could possibly lead to termination of employment. Despite this clear warning, petitioner continued to willfully disregard safe operating policies and procedures, culminating in his decision to illegally cross a double yellow line and drive into oncoming traffic with a busload of children. While petitioner argues that he was never warned, orally or in writing, that it was impermissible to cross a double yellow line, the Court finds no merit to this argument. Petitioner's action was patently illegal and in violation of State and municipal traffic laws. As a licensed bus operator, as with any licensed driver, petitioner is expected to obey all such laws and a written or verbal warning about such actions being impermissible was unnecessary. As such, it is clear that respondent established petitioner's action was both insubordinate and a willful neglect of his duty such that an evaluation and a period of improvement were unnecessary.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 12, 2015

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**

Chief Justice Margaret L. Workman
Justice Menis E. Ketchum