453 S.E.2d 374

**Thomas PARHAM, Plaintiff Below, Appellant,**

v.

**RALEIGH COUNTY BOARD OF EDUCATION, Defendant Below, Appellee.**

**No. 22252.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Dec. 16, 1994.

---

Lee Adler, Beckley, for appellant.

Erwin Conrad, Fayetteville, for appellee.

McHUGH, Justice:

This is an appeal from the October 12, 1993, order of the Circuit Court of Raleigh County which affirmed the decision of the West Virginia Education and State Employee Grievance Board, upholding the Raleigh County Board of Education's ten-day suspension, without pay, of the appellant, Thomas Parham. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the decision of the circuit court is affirmed.

## I

Thomas Parham is a biology teacher and head baseball coach at Woodrow Wilson High School (hereinafter "WWHS") in Beckley, West Virginia. A seventeen-year employee of the Raleigh County Board of Education (hereinafter "BOE"), Mr. Parham had never been the subject of disciplinary action nor had he ever been involved in a physical altercation with a student. The record further indicates that Mr. Parham has consistently maintained discipline in his classroom without having to either remove a student or send one to an administrative office for punishment.

On March 4, 1991, Mr. Parham was given his first lunch-duty cafeteria assignment at

WWHS.[1] While on duty, Mr. Parham observed a student, C.B.,[2] jump ahead of other students waiting in the cafeteria line. Mr. Parham ordered C.B. to go to the end of the line, but C.B. became unruly and verbally abusive to Mr. Parham. Mr. Parham proceeded to take hold of C.B.'s arm to escort him to the office of WWHS Assistant Principal Carleton Spicer. In route to Mr. Spicer's office, C.B. stopped several times, attempting to cause Mr. Parham to run into him. C.B. used abusive and profane language toward Mr. Parham all the way to the office.

The events which subsequently transpired when Mr. Parham and C.B. entered Mr. Spicer's office were disputed by the parties. Mr. Spicer testified that Mr. Parham told him that C.B.'s parents should be called because Mr. Parham was not going to have a student speak to him the way C.B. had. C.B. then shoved Mr. Parham. Though Mr. Parham warned C.B. not to make contact with him again, C.B. pushed him again. It was at that point that Mr. Parham slapped C.B. in the face with the back of his hand. Mr. Spicer testified that Mr. Parham, who was 6'3" tall and weighed 210 pounds and was quite a bit bigger than C.B.,[3] did not appear threatened by or afraid of C.B. Mr. Spicer further testified that, when he later spoke with Mr. Parham about the incident, Mr. Parham never indicated that he had felt threatened by C.B. or that he struck him in self-defense. Finally, Mr. Spicer testified that, instead of striking the student, Mr. Parham should have left the office after C.B. shoved him a second time.

It was Mr. Parham's testimony, however, that he was attempting to explain to Mr. Spicer what had occurred in the cafeteria when C.B., who was standing to Mr. Parham's right, pushed him twice. Mr. Parham testified that he was particularly concerned about being able to protect himself should C.B. strike him a third time because he suffers from a condition called trigeminal neuralgia. This condition, also known as TMJ, has caused numbness on the right side of Mr. Parham's face; therefore, he would not necessarily feel it if he were hit on that side. Consequently, Mr. Parham is overly-protective of the right side of his face. While Mr. Parham testified that he feared for his physical safety throughout the incident and that he struck C.B. in self-defense, he also testified that he "just struck him in the mouth to keep him quiet.... It was only a tap with the back hand, not to physically abuse him but to acquire his attention."

Following this altercation, Mr. Spicer ordered Mr. Parham from his office and another teacher, Neal Lacey, then physically restrained C.B. C.B. suffered a nosebleed but was not otherwise injured.

The Superintendent of Schools for Raleigh County, Dwight Dials, and WWHS Principal, Miller Hall, were immediately informed of the incident. At the direction of Superintendent Dials, Principal Hall conducted an investigation of the incident, which included interviews with all parties involved. Superintendent Dials subsequently met with Principal Hall, Mr. Spicer, Mr. Parham and Mr. Parham's counsel. Though Principal Hall and Mr. Spicer presented what they knew about the incident, Mr. Parham declined to make a statement. At the conclusion of the meeting, Principal Hall recommended that Mr. Parham be suspended for twenty days without pay. However, upon consideration of C.B.'s past disciplinary record[4] and the information discussed in the meeting, Superintendent Dials modified the discipline and

1. Assistant Principal Carleton Spicer was scheduled to be on lunch duty along with Mr. Parham. However, Mr. Spicer, whose responsibility is the overall discipline of the cafeteria, failed to appear for cafeteria assignment. Mr. Parham was never instructed or trained in how to handle unruly students.

2. We follow our past practice in cases involving juveniles which also involve sensitive facts and do not use the student's full name. *See, e.g., Board of Education v. Chaddock,* 183 W.Va. 638,

398 S.E.2d 120 (1990); *State ex rel. W.Va. Dep't of Human Serv. v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181 (1987). We further note that the student's identity is not germane to this opinion.

3. The evidence revealed that C.B. was approximately 6' tall and weighed 150 pounds.

4. Though the record is unclear as to the contents of C.B.'s past disciplinary record, the implication is that it is unfavorable.

suspended Mr. Parham for ten days without pay.

On March 21, 1991, Superintendent Dials presented the matter to the BOE[5] and a hearing was held. Principal Hall, Mr. Spicer, bus driver John Kintsler and WWHS teacher Neal Lacey testified at the hearing. Mr. Parham, while represented by counsel, did not testify. Mr. Kinstler testified that in the afternoon of March 4, 1991, the date of the incident in question, C.B. assaulted a student who had disembarked from his bus. Mr. Kinstler pulled C.B. off the student. As Mr. Kinstler was restraining C.B., C.B. cursed him profusely. Mr. Lacey similarly testified that, on that same day, he completed a disciplinary referral form on C.B. who had disrupted his classroom by talking and refusing to change seats.[6]

At the conclusion of the hearing, the BOE upheld the ten-day suspension, by a three-to-one vote, with one member abstaining. By letter dated March 29, 1991, Superintendent Dials informed Mr. Parham of the BOE's action and advised him that such action was taken "for reasons of neglect of duty; insubordination; and striking a student." C.B. was suspended from school for ten days and his father, subsequently, filed a battery warrant against Mr. Parham with the Raleigh County magistrate's office. Chief Deputy Prosecuting Attorney Kristen Keller interviewed both C.B. and his father in preparation for a hearing on the battery charge. When, during the interview, C.B. admitted that he had shoved Mr. Parham first, the complaint was withdrawn. An order of dismissal was issued by Magistrate Lorena Wallace, on March 22, 1991.

By letter dated March 26, 1991, Mr. Parham's counsel asked the BOE to reconsider

its decision in light of the magistrate's order dismissing the battery charge. The BOE declined to rescind or modify its decision.

On May 9, 1991, this case was heard before the West Virginia Education and State Employee Grievance Board (hereinafter "Grievance Board"). On November 7, 1991, Hearing Examiner Jerry A. Wright issued his decision, which upheld the BOE's actions in all respects. Specifically, Hearing Examiner Wright found that Mr. Parham's statement, on direct examination, that he struck C.B. to acquire his attention and to keep him quiet were illustrative of his motives. Consequently, Hearing Examiner Wright determined that Mr. Parham's assertion that he acted in self-defense cannot be accepted. Hearing Examiner Wright further found Mr. Spicer to be a credible witness and, thus, accepted his testimony that C.B. only lightly shoved Mr. Parham and that Mr. Parham struck him out of anger rather than fear.

By order of October 12, 1993, the Circuit Court of Raleigh County affirmed the decision of the Grievance Board. *See W.Va. Code,* 18–29–7 [1985]. It is from that order that Mr. Parham now appeals.

## II

Mr. Parham contends that the hearing examiner's conclusion that he did not act in self-defense when he struck C.B. was not supported by the evidence. It has been our traditional rule that evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong.[7] Accordingly, in syllabus point 1 of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989), we held: "A final order of the hearing examiner for

---

5. *W.Va.Code,* 18A–2–7 [1990] provides, in relevant part:

    The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter.

    . . . .

    The superintendent's authority to suspend school personnel shall be temporary only pending a hearing upon charges filed by the superintendent with the board of education and such period of suspension shall not exceed

thirty days unless extended by order of the board.

6. Coincidentally, Mr. Lacey is the same teacher who helped to restrain C.B. in Mr. Spicer's office, following the incident involving Mr. Parham.

7. *See, e.g., West Virginia Dep't of Health v. West Virginia Civil Service Comm'n,* 178 W.Va. 237, 358 S.E.2d 798 (1987); *West Virginia Dep't of Health v. Mathison,* 171 W.Va. 693, 301 S.E.2d 783 (1983).

the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." [8] *See also* syllabus, *Parker v. Summers County Bd. of Educ.*, 185 W.Va. 313, 406 S.E.2d 744 (1991); syllabus, *Sexton v. Marshall University*, 182 W.Va. 294, 387 S.E.2d 529 (1989). While the facts concerning Mr. Parham's motives for striking C.B. were disputed, the testimony of Mr. Spicer and of Mr. Parham himself reveal that there was substantial, reliable and probative evidence justifying the hearing examiner's finding that Mr. Parham did not strike C.B. in self-defense. *See Scalia, supra.*

As we indicated above, it was Mr. Spicer's testimony that Mr. Parham did not appear to be threatened by or afraid of C.B. after C.B. had shoved him. Mr. Spicer further testified that, in subsequent conversation about the incident, Mr. Parham never indicated that he had felt threatened or that he struck C.B. in self-defense. More significantly, in his own testimony, Mr. Parham stated that he struck C.B. to keep him quiet and "to acquire his attention." While we recognize that Mr. Parham also testified that he feared for his physical safety throughout the incident, we, nevertheless, find that, based upon the entire record, the hearing examiner was entitled to conclude otherwise. We, therefore, conclude that the hearing examiner's findings were amply supported by the facts and that they were not clearly wrong.

### III

■ Mr. Parham also argues on appeal that his notice of suspension and the reasons stated therein do not legally support any

disciplinary action against him. In analyzing this issue, we shall do so in light of the hearing examiner's finding that, when striking C.B., Mr. Parham did not act in self-defense.

The reasons for Mr. Parham's suspension were set forth in a letter to him from Superintendent Dials as "neglect of duty," "insubordination" and "striking a student." *W.Va. Code,* 18A–2–8 [1990] enumerates the reasons for which a teacher may be suspended or dismissed. *W.Va.Code,* 18A–2–8 [1990] states, in relevant part:

> Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony, or a guilty plea or a plea of nolo contendere to a felony charge.[9]

(footnote added). Indeed, this Court has previously held that a teacher may only be dismissed for these reasons. In syllabus point 3 of *Beverlin v. Board of Education,* 158 W.Va. 1067, 216 S.E.2d 554 (1975), we held that "[t]he authority of a county board of education to dismiss a teacher under *W.Va.Code* 1931, 18A–2–8, as amended, must be based upon the just causes listed therein and must be exercised reasonably, not arbitrarily or capriciously." [10] *See also* syllabus, *Meckley v. Kanawha County Bd. of Educ.,* 181 W.Va. 657, 383 S.E.2d 839 (1989); syl. pt. 2, *Totten v. Board of Educ. of County of Mingo,* 171 W.Va. 755, 301 S.E.2d 846 (1983); *DeVito v. Board of Ed., County of Marion,* 169 W.Va. 53, 285 S.E.2d 411 (1981).

■ In that the causes for suspension are the same as those for dismissal, under *W.Va. Code,* 18A–2–8 [1990], it follows, then, that a

8. In *Scalia,* we explained that the limited right of judicial review, under *W.Va.Code,* 18–29–7 [1985], is substantially the same as the standard of judicial review of an administrative decision under the Administrative Procedures Act, *W.Va. Code,* 29A–5–4(g) [1964]. *See* syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983).

9. *W.Va.Code,* 18A–2–8 [1990] further provides, in relevant part, that "[t]he charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an op-

portunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to ... [§ 18–29–1 et seq.][.]" Accordingly, Mr. Parham was given actual notice, a meaningful hearing, assistance of counsel and has exercised his right to judicial review. *See Fox v. Board of Education of Doddridge County,* 160 W.Va. 668, 671, 236 S.E.2d 243, 246 (1977); *W.Va.Code,* 18A–2–7 [1990].

10. Since this Court's decision in *Beverlin, W.Va. Code,* 18A–2–8 has been amended on several occasions, which do not affect our decision in this case.

teacher's suspension must also be reasonable and based upon the causes found in that *Code* section. *See Totten*, 171 W.Va. at 758, 301 S.E.2d at 848 (1983). We hold, therefore, that the authority of a county board of education to suspend a teacher under *W.Va. Code*, 18A–2–8 [1990] must be based upon the causes listed therein and must be exercised reasonably, not arbitrarily or capriciously.

As we previously indicated, the BOE suspended Mr. Parham on the grounds of "insubordination," "neglect of duty" and "striking a student." Specifically, Superintendent Dials testified concerning several BOE policies violated by Mr. Parham when he struck C.B. For example, policy GAF–R, entitled Staff–Student Relations, suggests that, to develop positive staff-student relations, staff should refrain from striking children. Other policies, such as the job description for coaches, directs personnel to maintain professional work habits, to display self-control and to respect students' rights. According to Superintendent Dials, Mr. Parham, a seventeen-year BOE employee, had these policies available to him and was expected to know and adhere to them.

While we recognize that the BOE did not specifically allege *"willful* neglect of duty," as required by *W.Va.Code*, 18A–2–8 [1990], we find that, considering the evidence, Mr. Parham, nevertheless, acted willfully in striking C.B. In that the notice of suspension stated that Mr. Parham was also being suspended for "striking a student," he was on notice that his neglect of duty was, inherently, "willful." *W.Va.Code*, 18A–2–8 [1990]. The absence of the word "willful" is, therefore, not sufficient to overturn the ten-day suspension in this case.

Furthermore, while Mr. Parham contends that the penalty imposed upon him by the BOE, a ten-day suspension without pay, was too severe,[11] we conclude otherwise, as the BOE's action was neither unreasonable, arbitrary nor capricious. We recognize that the policies described above do not specify the penalty to be imposed for the first-time offense of striking a student. However, considering the hearing examiner's finding that

Mr. Parham did not strike C.B. in self-defense, it can hardly be argued that Mr. Parham should not be disciplined for his actions.

As we indicated above, though Principal Hall recommended that Mr. Parham be suspended for twenty days without pay, Superintendent Dials modified the discipline to a suspension of ten days without pay. In coming to this decision, the record reveals that, in addition to the general BOE policies in place at the time of the incident, Superintendent Dials, and subsequently, the BOE, considered and weighed Mr. Parham's otherwise meritorious record as a long-time BOE employee, as well as C.B.'s behavior and past record. The hearing examiner made sufficient findings of fact and conclusions of law to justify the ten-day suspension without pay. Furthermore, the BOE's decision and sanction were appropriate considering the evidence introduced and the determination that Mr. Parham did not strike C.B. in self-defense.

It is difficult not to be somewhat sympathetic to Mr. Parham, considering C.B.'s insolent and disruptive behavior. However, teachers and school personnel are sometimes forced to resemble correctional officers as their emotions must not dictate their actions. Certainly school personnel do not have to tolerate behavior such as C.B.'s. However, the appropriate answer is suspension, not slapping or otherwise striking.

For the reasons stated above, we conclude that the BOE suspended Mr. Parham pursuant to *W.Va.Code*, 18A–2–8 [1990], and, further, did so reasonably, not arbitrarily or capriciously. Accordingly, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**11.** Mr. Parham equates the ten-day suspension to a $1700 fine, which he compares to the maximum fine of $500 which may be imposed upon someone convicted of criminal battery. *See W.Va.Code*, 61–2–9(c) [1978].