575 S.E.2d 134

Carol GRAHAM, Petitioner Below, Appellant,

v.

PUTNAM COUNTY BOARD OF EDUCATION, Respondent Below, Appellee.

No. 30361.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2002.

Decided Nov. 8, 2002.

---

Jason A. Poling, Tyson & Tyson, Huntington, for the Appellant.

John A. Grafton, Grafton Law Office, PLLC, Winfield, for the Appellee.

PER CURIAM.

This is an appeal by Carol Graham (hereinafter "Appellant") from a June 29, 2001, order of the Circuit Court of Kanawha County upholding a September 30, 1999, decision of the West Virginia Education and State Employee's Grievance Board (hereinafter "Grievance Board"). The administrative law judge for the Grievance Board found that the Putnam County Board of Education (hereinafter "Board of Education") had properly suspended the Appellant, with pay, upon a finding of insubordination, willful neglect of duty, and breach of confidentiality. The administrative law judge further found that although the Appellant had presented a prima facie case of reprisal, the Board had

provided a legitimate, non-pretextual reason for its actions. Having thoroughly reviewed the record and the arguments of counsel, we affirm the decision of the lower court.

## I. Facts

The Appellant was employed as the assistant principal at West Teays Elementary School in Putnam County, West Virginia. On April 2, 1999, a student attempted to flee the school grounds at the end of the school day and was apprehended by Mr. Bruce Faulkner, the principal of the school. The student was placed in a school classroom to await the arrival of a family member and was being supervised by behavior disorders teacher Mr. Bob Opperman. To assist with the supervision and proper restraint of the distraught child, Mr. Faulkner attempted to summon the Appellant to the room in which the child was being restrained. Mr. Faulkner first attempted to contact the Appellant through a public address system[1] and thereafter located the Appellant in her office. The Appellant was engaged in a meeting with a substitute teacher. When Mr. Faulkner explained the situation concerning the student's behavior, the Appellant asked Mr. Faulkner why he could not handle the situation without her assistance. He replied that he was on the telephone. The Appellant questioned his claim that he was using the telephone based upon the fact that the lights were not lit on the phone system, indicating that no phone was in use. Mr. Faulkner explained that he was actually just awaiting a phone call from the student's parent. The Appellant thereafter indicated that she would assist with the student as soon as possible.

The Appellant then closed and, perhaps, locked her office door and continued the meeting with the substitute teacher.[2] Mr. Faulkner reappeared sometime later[3] and used his key to enter the Appellant's office, requesting an explanation for the Appellant's delay. The substitute teacher exited the office, and the Appellant thereafter departed in an agitated manner.[4] The Appellant then reported to the classroom in which the student was being restrained to determine whether she could be of any assistance. When Mr. Opperman responded that the Appellant's help would not be necessary, she returned to Mr. Faulkner and asked why he had insisted that she be present with the disorderly student. Mr. Faulkner informed the Appellant that he needed her to witness the situation. The Appellant then returned to the classroom and acted as a witness until the student's parent arrived.

Upon returning to her own office, the Appellant cleaned out her desk with the intention of not returning after spring break, which was scheduled for the following week. Later that evening, the Appellant received a call from a friend requesting special attention for her grandchild who had begun classes at West Teays Elementary. During the conversation, the Appellant discussed the day's events but did not mention the name of the disorderly child. When that friend later spoke with her son, she learned that the disorderly child at West Teays Elementary had been her grandson. The child's father contacted Mr. Faulkner regarding the grandmother's conversation with the Appellant, under the impression that the Appellant had released confidential information regarding the child.

The following week was spring break; thus, school was not in session. Upon re-

1. The public address system was apparently not operational in the Appellant's office.

2. The Appellant testified that she did not remember locking the door. However, the substitute teacher with whom she was meeting testified that the Appellant did lock the door.

3. The record reflects that the delay between Mr. Faulkner's first and second visits to the Appellant's office was between thirty seconds, as recalled by the Appellant, and five to ten minutes.

4. Mrs. Carolyn Rogers, another teacher at West Teays Elementary, testified that the Appellant left her office and stomped down the hall, muttering that Mr. Faulkner was a "blockhead." Specifically, Mrs. Rogers explained the situation as follows:

> [T]hen I saw Dr. Graham come out of the office. She—for lack of a better term in West Virginia, she looked like she was upset. She was stomping, and she was coming down the hall out of the office. She said something to the effect of, "He's such a blockhead. He can't do anything for himself" or "He can't do anything by himself."

turning to duty after spring break, Mr. Faulkner contacted Mr. Bob Hull, Director of Early Childhood Education, and Dr. Sam Sentelle, Superintendent of Putnam County Schools, regarding the Appellant's actions. During these conversations, Mr. Faulkner was directed to prepare a letter detailing the incident.

On April 26, 1999, the Appellant filed a grievance against Mr. Faulkner, alleging harassment based upon Mr. Faulkner's angry entrance to her office.[5] On May 7, 1999, Mr. Faulkner sent a letter to Dr. Sentelle outlining the events of April 2, 1999, and requesting that the Appellant be disciplined for her conduct. A letter was also provided to the Appellant, dated May 10, 1999, explaining the charges against her and the fact that suspension would be recommended to the Board. The Appellant sent her husband and a union representative to the May 17, 1999, meeting of the Putnam County Board of Education. Neither spoke on the Appellant's behalf during the meeting or requested any opportunity to present additional matters for consideration. The Board of Education voted to suspend the Appellant, and the Appellant was informed of this decision by letter dated May 19, 1999.

The Appellant filed a grievance with the Grievance Board, alleging that the suspension decision should be overturned and that the suspension constituted a reprisal for her allegations of harassment against Mr. Faulkner. By decision dated September 30, 1999, the Grievance Board found that the Putnam County Board of Education properly suspended the Appellant upon a finding of insubordination, willful neglect of duty, and breach of confidentiality. Additionally, the Grievance Board found that Putnam County had provided a legitimate, non-pretextual reason for its actions and that its actions were not in retaliation for the Appellant's claims against Mr. Faulkner. The Circuit Court of Kanawha County upheld the Grievance Board's decision by order dated June 29, 2001. The Appellant now appeals to this Court.

## II. Standard of Review

In syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court explained: "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18-29-1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." In *Martin v. Randolph County Board of Education*, 195 W.Va. 297, 465 S.E.2d 399 (1995), this Court commented upon the narrow review which is appropriate in these matters, explaining that "[t]he scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the hearing examiner." 195 W.Va. at 304, 465 S.E.2d at 406. Furthermore, upon review of an administrative law judge's decision which was affirmed by a lower court, "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts." *Id.* "[C]onclusions of law and application of law to the facts" are reviewed de novo. *Id.*

## III. Discussion

West Virginia Code § 18A-2-8 (1990) (Repl.Vol.2001) enumerates the reasons for which a teacher may be suspended or dismissed, providing in relevant part as follows:

> Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge. A charge of unsatisfactory performance shall not be made except as the result of an employee performance evaluation pursuant to section twelve of this article. The charges shall be stated in writing served upon the employee within two days of pre-

---

**5.** The Appellant maintains in her brief to this Court that the manner in which Mr. Faulkner entered her office for the second time left her in a "fragile state, due to stress." The brief asserts

that her "stress from the way in which she was treated by Faulkner was so great that she was required to seek medical attention and take a medical leave of absence."

sentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§§ 18–29–1 et seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, except that dismissal for the conviction of a felony or guilty plea or plea of nolo contendere to a felony charge is not by itself a grievable dismissal. An employee charged with the commission of a felony may be reassigned to duties which do not involve direct interaction with pupils pending final disposition of the charges.

This Court has previously held that a teacher may be dismissed only for the reasons specifically enumerated in the statute. In syllabus point three of *Beverlin v. Board of Education,* 158 W.Va. 1067, 216 S.E.2d 554 (1975), we held that "[t]he authority of a county board of education to dismiss a teacher under *W.Va.Code* 1931, 18A–2–8, as amended, must be based upon the just causes listed therein and must be exercised reasonably, not arbitrarily or capriciously."[6] Applying that rationale to cases of suspensions, this Court explained as follows in *Parham v. Raleigh County Bd. of Educ.,* 192 W.Va. 540, 453 S.E.2d 374 (1994): "In that the causes for suspension are the same as those for dismissal, under *W.Va.Code,* 18A–2–8 [1990], it follows, then, that a teacher's suspension must also be reasonable and based upon the causes found in that *Code* section." *Id.* at 544–45, 453 S.E.2d at 378–79. In syllabus point two of *Parham,* this Court summarized as follows: "The authority of a county board of education to suspend a teacher under *W.Va.Code,* 18A–2–8 [1990] must be based upon the causes listed therein and must be exercised reasonably, not arbitrarily or capriciously."

In the present appeal, the Appellant contends that the discipline imposed, suspension

for a short period of time with pay, was improper. Her primary arguments are that her due process rights were violated, that the findings of fact relating to her behavior on April 2, 1999, were clearly erroneous, and that the suspension was in retaliation for her charges against Mr. Faulkner.

### A. Due Process

■ With regard to the Appellant's claims of denial of due process, our review of this matter discloses that the Appellant had actual notice of the claims against her and made the conscious decision not to appear personally at the Board meeting in which the issues were to be discussed. Instead, she sent her husband and her union representative. Neither the Appellant nor her union representative attempted to challenge the suspension with either the Superintendent or the Board of Education prior to or during the Board's consideration of the matter.

Further, it is undisputed that the charges against the Appellant were presented in writing to the Appellant well in advance of the two days prior to the Board's consideration on May 17, 1999, as required by West Virginia Code § 18A–2–8. Based upon the Appellant's actual notice, we find that minimal due process requirements have been satisfied, despite the Appellant's arguments to the contrary. As this Court found in *Beverlin,* due process requirements are satisfied where the individual in question "was accorded actual notice, a meaningful (albeit unsuccessful) hearing, the opportunity to confront his accusers, assistance of counsel and the availabilities of remedies for review. In that regard, he cannot ask for more." 158 W.Va. at 1072, 216 S.E.2d at 557.[7] We have consistently stated that "due process is a flexible concept, and that the specific procedural safeguards to be accorded an individual facing a deprivation of constitutionally protected rights depends on the circumstances of the particular case." *Buskirk v. Civil Service Comm'n,* 175 W.Va. 279, 283, 332 S.E.2d 579,

---

**6.** In *Beverlin,* while this Court found no violation of principles of due process, it did reverse the dismissal of a teacher who missed his first day of employment because he was registering for college classes and the students were not required to be present yet. *Id.* at 1075, 216 S.E.2d at 559.

**7.** While the Appellant in the present case did not have counsel during the hearing attended by her husband and union representative, we do not believe that the absence of counsel constitutes as due process violation.

583 (1985). For example, even where the termination of employment was involved, this Court in *Board of Education of the County of Mercer v. Wirt*, 192 W.Va. 568, 453 S.E.2d 402 (1994), decided that a full adversarial hearing was not necessary. The "employee is entitled to a written notice of the charges, an explanation of the evidence, and an opportunity to respond" prior to Board action. *Id.* at 575, 453 S.E.2d at 409.[8]

### B. Administrative Law Judge's Findings of Fact

The Appellant also asserts that the administrative law judge's findings of fact were clearly erroneous. As referenced above, the Board of Education may suspend a teacher for actions constituting insubordination, and the Board of Education's actions in that regard must be reasonable. However, a determination of precisely what actions, statements, conduct, or behavior might constitute "insubordination" within a particular context is difficult. In reviewing cases of alleged insubordination in the education context, the Grievance Board has been guided by the following explanation of the term insubordination: "The definition of insubordination however encompasses more than an explicit order and subsequent refusal to carry it out. It may also involve a flagrant or willful disregard for implied directions of an employer." *Sexton v. Marshall University,* Docket No. BOR2–88–029–4, 10 (May 25, 1985), *aff'd Sexton v. Marshall University,* 182 W.Va. 294, 387 S.E.2d 529 (1989).

Similarly, in *Meckley v. Kanawha County Board of Education,* 181 W.Va. 657, 383 S.E.2d 839 (1989), an elementary school teacher's pattern of refusing to attend PTA and faculty meetings, as well as her refusal to issue student report cards, was deemed sufficient to sustain her dismissal based on insubordination and willful neglect of duty, regardless of whether teacher's attendance at those meetings was mandatory. 181

W.Va. at 658–61, 383 S.E.2d at 840–43. In *Fox v. Board of Education,* 160 W.Va. 668, 236 S.E.2d 243 (1977), this Court found that although dismissal was too severe a penalty for missing a parent-teacher conference, the teacher could be disciplined. The Court explained:

> We do not attempt to formulate a comprehensive definition of "wilful neglect of duty" that would reasonably support a teacher's permanent dismissal. A continuing course of lesser infractions may well, when viewed in the aggregate, be sufficient. And we may envision a single act of malfeasance, whereby severe consequences are generated, that merits a dismissal.

160 W.Va. at 672, 236 S.E.2d at 246.

In *Butts v. Higher Education Interim Governing Board/Shepherd College,* 212 W.Va. 209, 569 S.E.2d 456, 2002 WL 1334483 (2002), this Court recognized that "case law which defines 'insubordination' in the college or public school context is rather meager." 212 W.Va. at 211, 569 S.E.2d at 458. This Court examined the issue of insubordination in the context of teachers in higher education and explained:

> [F]or there to be "insubordination," the following must be present: (a) an employee must refuse to obey an order (or rule or regulation); (b) the refusal must be wilful; and (c) the order (or rule or regulation) must be reasonable and valid. This proposition is supported by the many cases cited in the annotation.

*Id.; see also Board of Educ. v. Harris,* 218 Ill.App.3d 1017, 161 Ill.Dec. 598, 578 N.E.2d 1244, 1252 (1991) (continued refusal to accept classroom assignment constituted insubordination); *Childs v. Roane County Bd. of Educ.,* 929 S.W.2d 364, 365–66 (Tenn.App. 1996) (insubordination finding supported where teacher did not control her classroom

---

8. In syllabus point five of *Waite v. Civil Service Commission,* 161 W.Va. 154, 241 S.E.2d 164 (1977), this Court explained:

 The extent of due process protection affordable for a property interest requires consideration of three distinct factors: first, the private interests that will be affected by the official action; second, the risk of an erroneous depri-

vation of a property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

and maintained questionable grading methods).

In the present case, despite differences in recollection regarding whether the Appellant intentionally locked her office door and the extent of her expression of aggravation as she finally left her office and walked toward the classroom as requested by the principal, the record clearly reflects that the Appellant seriously questioned the authority of her supervisor when assistance was first requested, refused to respond to the request for some period of time, signified her dissatisfaction with her supervisor's insistence in an unprofessional manner, and openly expressed defiance to her supervisory authority, both toward Mr. Faulkner personally and in the presence of other personnel.

Review of cases in which the facts are vigorously contested is challenging. In this arduous process, this Court must be guided by definitive principles of appellate review. In *Parham*, for example, this Court encountered the contention that the hearing examiner's findings of fact were incorrect with regard to whether a teacher acted in self-defense when he struck a student. We recognized the limitation in our review, explaining that "[i]t has been our traditional rule that evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." 192 W.Va. at 543, 453 S.E.2d at 377. In examining the disputed facts, we noted, "While the facts concerning Mr. Parham's motives for striking C.B. were disputed, the testimony of Mr. Spicer and of Mr. Parham himself reveal that there was substantial, reliable and probative evidence justifying the hearing examiner's finding that Mr. Parham did not strike C.B. in self-defense." *Id.* at 544, 453 S.E.2d at 378. We recognized that while Mr. Parham testified to his version of the facts, "based upon the entire record, the hearing examiner was entitled to conclude otherwise." *Id.*

 Likewise, in the present case, the parties presented extensive and often conflicting evidence regarding the events of April 2, 1999, and the Appellant's behavior toward her supervisor. The Appellant disputed the allegations of misconduct, insubordination, and breach of confidentiality.[9] In fact, the record is replete with disputed facts. It is not our domain to replace the administrative law judge's factual findings with the conclusions this Court might have reached had it served as a fact-finding body and an evaluator of the credibility of the witnesses. The clearly erroneous

> standard does not entitle a reviewing court to reverse the finder of fact simply because it may have decided the case differently.... Indeed, if the lower tribunal's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently[.]

*Board of Educ. of County of Mercer v. Wirt*, 192 W.Va. at 578–79, 453 S.E.2d at 412–13 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) (footnotes omitted). As this Court articulated in syllabus point one of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000),

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, *a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations.* Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

208 W.Va. at 177–78, 539 S.E.2d at 437–38 (emphasis supplied). Based upon the appropriate standard for this Court's review, we conclude that absent a showing of clear error, which in this Court's opinion has not been presented here, the administrative law judge's factual findings must stand.

---

9. We note that the evidence regarding leaving the school without permission and breach of confidentiality is somewhat scant. We believe that the Board of Education's determination of appropriate discipline was based primarily upon the Appellant's acts toward her supervisor, Mr. Faulkner.

**532**

## C. Retaliation

 The Appellant also maintains that the Board of Education failed to rebut her prima facie showing that her suspension was in retaliation for the allegations she forwarded against Mr. Faulkner. The administrative law judge determined that the Board of Education had negated the Appellant's contention regarding retaliation by advancing a legitimate, non-retaliatory reason for her suspension. Upon the presentation of that legitimate, non-retaliatory basis, the administrative law judge further found that Appellant did not demonstrate that the Board of Education's proffered reason for the suspension was pretextual so as to prevail on her retaliation claim.

Our law is clear that an employee may establish a prima facie case of retaliation, but once the employer articulates a legitimate, non-discriminatory reason for its action, the burden returns to the employee. An employer rebuts the presumption of retaliatory action by offering "credible evidence of legitimate nondiscriminatory reasons for its actions. . . ." *Mace v. Pizza Hut, Inc.,* 180 W.Va. 469, 472, 377 S.E.2d 461, 464 (1988). "Should the employer succeed in rebutting the presumption, the employee then has the opportunity to prove by a preponderance of the evidence that the reasons offered by the employer for discharge were merely a pretext for unlawful discrimination." *West Virginia Dept. of Natural Resources v. Myers,* 191 W.Va. 72, 76, 443 S.E.2d 229, 233 (1994).

Our review of the record reveals no evidence that the decision of suspension with pay was to any degree based upon the Appellant's filing of her allegations against Mr. Faulkner. We consequently find no reason to disturb the administrative law judge's findings of fact with regard to the retaliation claim.

## D. Conclusion

The Appellant was suspended with pay for a very short period of time. Under these circumstances, fashioning a remedy to accommodate the Appellant seems implausible, except to expunge her record. While this Court is not entirely unsympathetic to the Appellant, we must acknowledge that the Appellant's behavior toward her supervisor was inappropriate and cannot be condoned in the school system. Thus, while the issue may have been handled differently by the supervisory personnel, we discern no clear error in the findings of fact, and we are not persuaded that the lower tribunals acted unreasonably by affirming the suspension of the Appellant for a brief period of time with pay. We consequently affirm the decision of the lower court.

Affirmed.