# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2020 Term

FILED

**February 18, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0785

**EVERETT FRAZIER,
COMMISSIONER, WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner**

v.

**S.P.,
Petitioner Below, Respondent**

_____

**Appeal from the Circuit Court of Brooke County
The Honorable David J. Sims, Judge
Civil Action No. 17-AA-3**

**REVERSED AND REMANDED**
_____

**Submitted: January 14, 2020
Filed: February 18, 2020**

Patrick Morrisey
Attorney General
Janet E. James
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Joseph J. John
John & Werner Law Offices, PLLC
Wheeling, West Virginia
Attorney for Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

# SYLLABUS BY THE COURT

1.     "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.     "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syllabus point 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.     "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence

on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syllabus point 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

4. "Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syllabus point 1, in part, *Cahill v. Mercer County Board of Education*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

5. "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syllabus point 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984).

**Jenkins, Justice:**

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"),[1] appeals the final order of the Circuit Court of Brooke County, West Virginia, reversing the order of the Office of Administrative Hearings ("OAH") which revoked Respondent S.P.'s[2] driver's license for driving under the influence ("DUI"). S.P. unsuccessfully challenged the revocation of her license with the OAH, and then appealed to the Circuit Court of Brooke County. The circuit court found that the OAH's final order was contrary to the record, constituted an abuse of discretion, and was clearly erroneous in light of substantial and reliable evidence that S.P. was not in violation of any DUI law at the time she operated her vehicle. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find that the OAH's findings were not clearly wrong, and that the circuit court abused its discretion in substituting its judgment for that of the fact finder below. Accordingly, we reverse the circuit court's final order and remand this case for reinstatement of the administrative order revoking S.P.'s driver's license.

---

[1] Since the filing of this case, the DMV Commissioner has changed and the Commissioner is now Everett Frazier. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] It is this Court's customary practice in cases involving sensitive facts to refer to parties by their initials rather than by their given names. *See In re Jeffrey R.L.*, 190 W. Va. 24, 26 n.1, 435 S.E.2d 162, 164 n.1 (1993).

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

On July 6, 2013, two Wheeling Police Officers, Officer Sean Brantley and Officer Matthew Hronek, were parked in separate cruisers in the Tim Horton's parking lot along National Road in Wheeling, West Virginia. On this day, eighteen-year-old S.P. was operating a silver Honda Accord traveling south on Bethany Pike. At approximately 1:32 a.m., both officers witnessed S.P. go through the red light as she was making a left turn onto National Road. Officer Brantley initiated a traffic stop in a nearby shopping plaza, and Officer Hronek followed as backup. Once Officer Brantley approached the vehicle, he identified S.P. as the driver of the vehicle, and observed an odor of alcohol in the car. Based on his observations, Officer Brantley asked S.P. if she had consumed any alcohol that evening. S.P. admitted that she had been at a party and had sipped on some alcohol. Officer Brantley relayed this information to Officer Hronek, as he was on a DUI patrol.

Officer Hronek then approached the vehicle and observed that S.P. "had glassy, bloodshot eyes and had the odor of alcohol emitting from her." He also observed that S.P.'s speech was nervous, mumbling, and low in volume. Officer Hronek then "asked her to step out of the vehicle to perform field sobriety tests[,] and she complied." He first explained, and then performed, the horizontal gaze nystagmus ("HGN") test. Officer Hronek indicated in the DUI Information Sheet that S.P. had a "lack of smooth pursuit" and a "distinct & sustained nystagmus at maximum deviation." On the walk and turn test, he noted an "improper turn," and for the one-leg stand test, he noted that S.P. "sways while

2

balancing" and "puts foot down" – opining that she failed that test. Then, when S.P. was asked to count aloud to the number 20, she approached the number 17, and "skipped ahead and went straight from 17 to 20."

Next, Officer Hronek administered the Alco-Sensor FST preliminary breath test. The test showed that S.P. had a blood alcohol content of thirty thousandths of one per cent (0.03), by weight, at 1:50 a.m. Based upon these observations, Officer Hronek had reason to believe that S.P. was driving under the influence of alcohol, drugs, or controlled substances. Officer Hronek arrested S.P. for driving under the influence.

After transporting S.P. to the Wheeling Police Department, she signed the Implied Consent Statement, which specifies the penalties for refusing to submit to a designated secondary chemical test and the fifteen-minute time limit for refusal. The Intoximeter EC/IR II revealed a blood alcohol content of nineteen thousandths of one percent (0.019), by weight, at 2:29 a.m. Officer Hronek then read S.P. the Miranda warning at 2:45 a.m. During a post-arrest interview, S.P. advised Officer Hronek that she had consumed "one red plastic cup of peach schnapps mixed with lemonade, Smirnoff strawberry," and "sampled other stuff." She also admitted that she had smoked marijuana 2.5 to 3 hours earlier.

A criminal complaint was filed against S.P., charging her with DUI alcohol, under twenty-one years of age, in violation of Wheeling Municipal Ordinance 333.01(h),

3

which states that if an individual under the age of twenty-one operates a vehicle with "an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, for a first offense under this subsection is guilty of a misdemeanor."[3]  S.P. filed a motion to dismiss the criminal charge as a matter of law, and Municipal Court Judge Jeffrey Miller dismissed the case with prejudice.[4]

The DMV entered its initial order of revocation for DUI on July 25, 2013. S.P. timely requested a hearing from the OAH, and the hearing was held on November 8, 2013.  S.P. appeared at the hearing, but did not present testimony.  The hearing examiner entered a final order on March 22, 2017, concluding that Officer Hronek lawfully arrested S.P. for DUI and that the record contained sufficient evidence to show that S.P. operated a motor vehicle while under the influence.

---

[3] Wheeling Municipal Ordinance 333.01(h) corresponds with West Virginia Code § 17C-5-2 (LexisNexis 2013).

[4] Criminal charging documents have no effect on the administrative revocation of a driver's license.  *See* Syl. pt. 4, in part, *Miller v. Epling*, 229 W. Va. 574, 729 S.E.2d 896 (2012) ("When a criminal action for driving while under the influence in violation of West Virginia Code § 17C-5-2 (2008) results in a dismissal or acquittal, such dismissal or acquittal has no preclusive effect on a subsequent proceeding to revoke the driver's license under West Virginia Code § 17C-5A-1 *et seq.*  Moreover, in the license revocation proceeding, evidence of the dismissal or acquittal is not admissible to establish the truth of any fact.").

4

The OAH additionally concluded that,

as the testimony reflects, from the relatively low result of [S.P.'s] preliminary breath test . . . Officer [Hronek] suspected that [S.P.] was under the combined influence of alcohol and a controlled substance or other drug. That being the case, [Officer Hronek] was well within his authority to continue with his investigation and question [S.P.].

It further found that even without a blood or urine test, the evidence adduced was sufficient to prove that S.P. was driving a motor vehicle in this State while under the combined influence of alcohol and a controlled substance so the order of revocation should be affirmed.

S.P. appealed the OAH's order affirming the revocation of her driver's license to the Circuit Court of Brooke County on April 3, 2017, and a hearing was held on March 9, 2018. The circuit court entered its final order on August 8, 2018, finding that the OAH clearly erred in weighing the facts and in applying the requisite law and legal standards. In the circuit court's final order, it found that Officer Brantley had reasonable, articulable suspicion to initiate the traffic stop, but that S.P. did not engage in any driving conduct that would lead to the conclusion that she was impaired. It went on to find that there was no evidence that S.P. exhibited signs of intoxication through her movements or speech at the time of the stop; she passed the walk and turn test; she, while wearing sandals, had a score of two on the one-legged stand test, which is the minimum possible failing score; she registered a 0.019 BAC on the secondary test; and while Officer Hronek testified

5

that she failed the HGN with a score of four decision points, according to the National Highway Traffic Safety Administration ("NHTSHA"), a four on that test equates to a BAC of 0.08 or higher. The circuit court held that due to the "clear inconsistency between the HGN test score and [S.P.'s] BAC result, the HGN test result is fatally flawed and is not competent evidence. Based upon the evidence submitted, [S.P.] did not conclusively fail any of the three (3) field sobriety tests." It further found that S.P. should have been released at 2:29 a.m. when she registered a 0.019 BAC and that the OAH's reliance on S.P.'s alleged admission of marijuana use 2.5 to 3 hours prior to the stop was improper and misplaced. The circuit court specifically observed that there was "no evidence that the alleged marijuana use in any way impaired her ability to operate a motor vehicle." It also pointed out inconsistencies in the officers' timelines of events.

By order entered August 8, 2018, the circuit court reversed the revocation, and ruled that the OAH's final order was contrary to the record, constituted an abuse of discretion, and was clearly erroneous in light of substantial and reliable evidence to the contrary. It held that there was no lawful evidence that S.P. was in violation of any DUI law at the time she operated her vehicle so the revocation of her license must be overturned. The circuit court restored and reinstated S.P.'s driver's license. The DMV appeals the circuit court's August 8, 2018 order.

6

## II.

## STANDARD OF REVIEW

As set forth above, the DMV is appealing an order of the Circuit Court of Brooke County reversing its revocation of S.P.'s driver's license. This Court has previously held that,

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Further, "[i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *id.*

> Moreover, as this Court explained in *Modi v. West Virginia Bd. of Medicine,* 195 W. Va. 230, 239, 465 S.E.2d 230, 239 (1995), "findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference. . . . Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal." (citations omitted); *see also Martin v. Randolph County Bd. of Educ.,* 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995) (explaining that "[w]e must uphold any of the [administrative agency's] factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts").

7

*Lowe v. Cicchirillo*, 223 W. Va. 175, 179, 672 S.E.2d 311, 315 (2008). With these standards in mind, we now address the issue presented.

## III.

## DISCUSSION

On appeal to this Court, the DMV raises the sole issue of whether the circuit court abused its discretion in failing to afford deference to the findings of fact made by the OAH, and in substituting its judgment for that of the OAH in vacating the OAH's decision to revoke S.P.'s driver's license. Accordingly, we find it necessary to examine this Court's guidance for circuit courts reviewing an administrative agency's order:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

8

In the case *sub judice*, the circuit court reversed the OAH's order revoking S.P.'s driving privileges and based its reversal on the following West Virginia Code § 29A-5-4(g) (LexisNexis 2014) factors: (1) the OAH's final order was clearly wrong and erroneous in view of the reliable, probative, and substantial evidence on the whole record and constituted an abuse of discretion and (2) the DMV failed to meet its burden to prove that S.P. was driving a motor vehicle while under the influence.[5] More specifically, the circuit court concluded "as a matter of law that the Commissioner clearly erred in weighing the facts and in applying the requisite law and legal standards required to reach her conclusions." S.P. agrees with the circuit court and contends that OAH's final order was not supported by the evidence.

The DMV argues that the circuit court abused its discretion in reversing the OAH's final order "by systematically discounting and dismissing the reasons for the stop and the evidence of impairment, and giving undue weight to irrelevant and speculative evidence." The DMV further contends that the circuit court "substituted its judgment for

---

[5] When an administrative hearing is held in which a person is accused of driving under the influence of alcohol, controlled substances, or drugs, the OAH is required to make the following findings: (1) whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances, or drugs; (2) whether the person was lawfully placed under arrest, or was lawfully taken into custody for the purpose of administering a secondary chemical test; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances, or drugs; and (4) whether the tests, if any, were administered in accordance with the provisions set forth in the West Virginia Code. *See* W. Va. Code § 17C-5A-2(f) (2012 W. Va. Acts 605-06).

9

that of the fact finder and failed in its duty to determine whether there was a preponderance of the evidence to support the findings and conclusions of the OAH."

> This Court previously has held that
>
> > [s]ince a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, in part, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000). "We must uphold any of the [Administrative Law Judge's] ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record." *Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995). When reviewing these cases,

> [w]e cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. . . . Whether or not the ALJ came to the best conclusion, however, she was the right person to make the decision. An appellate court may not set aside the factfinder's resolution of a swearing match unless one of the witnesses testified to something physically impossible or inconsistent with contemporary documents. . . . The ALJ is entitled to credit the testimony of those it finds more likely to be correct.

*Id.* at 306, 465 S.E.2d at 408 (internal citations and quotations omitted).

Applying these standards to the present case, we agree with the DMV, and find that the circuit court abused its discretion by failing to examine the totality of the evidence, by failing to give deference to the findings of fact made by the OAH, and by substituting its own judgment in contravention of our established standards of review. When presented with testimony at the administrative hearing, the OAH examined the evidence that prompted the DMV's revocation of S.P.'s driver's license. This evidence included: (1) S.P.'s failure to obey the red traffic light; (2) Officer Hronek's detection of the odor of alcohol emitting from S.P. and her motor vehicle; (3) S.P.'s glassy and bloodshot eyes; (4) S.P.'s mumbled voice; (5) S.P.'s failing score on the one-leg stand test and the HGN test; (6) the preliminary breath test which showed a BAC of 0.03; (7) S.P.'s admission to "sips of Parrot Bay"; (8) the results of the secondary chemical test showing a BAC of 0.019; and (9) S.P.'s post-arrest admissions that she had smoked marijuana earlier that evening and consumed "peach schnapps mixed with lemonade, one Smirnoff strawberry, and some unidentified beverage." All of this evidence was noted in the DUI Information Sheet, which was completed by the arresting officer, Officer Hronek. Based upon this evidence, the OAH found that the evidence presented was sufficient to support a finding that S.P. had been driving under the influence.

While it is clear that the parties disagreed on how certain evidence should have been weighed, it was the OAH that was tasked with being the finder of fact, not the circuit court. "It is not our domain to replace the administrative law judge's factual findings

11

with the conclusions this Court might have reached had it served as a fact-finding body and an evaluator of the credibility of the witnesses." *Graham v. Putnam Cty. Bd. of Educ*., 212 W. Va. 524, 531, 575 S.E.2d 134, 141 (2002). Here, the OAH did not make any adverse credibility determinations regarding the officers who testified, yet the circuit court failed to give deference to those credibility determinations, and proceeded to make implicit adverse determinations in an effort to discredit the evidence.

In overturning the OAH's decision, the circuit court found the testimony of Officer Hronek to be unreliable. The circuit court noted that he "was working on the date in question on a DUI grant, specifically looking for DUI arrests, and admitted to receiving monetary, or in kind, incentives for DUI arrests."[6] In a further effort to attack Officer Hronek's credibility, the circuit court noted, in a footnote, "[t]he fact that law enforcement officers receive anything of value beyond their standard compensation for making DUI arrests (or any arrest for that matter) is highly concerning. Such a practice is likely to raise questions about the objectivity of the arresting officer." However, in making its decision to uphold the revocation of S.P.'s license, the OAH relied on the testimonies of both Officer Brantley and Officer Hronek, and found both of them to be credible witnesses.

---

[6] Officer Hronek testified that through the West Virginia Life Saver's Program, officers sometimes receive items for DUI arrests. He further noted that he has received "two coffee mugs, some pens, a C organizer, small items like that."

12

This Court has recognized that

> [w]e cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. *Board of Education of the County of Mercer v. Wirt*, 192 W. Va. [568,] 579, 453 S.E.2d [402,] 413 [1994] ("[i]ndeed, if the lower tribunal's conclusion is plausible when reviewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently if it had been the trier of fact").

*Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995).

Under the facts and evidence presented, we find that there was substantial evidence presented to support both the factual findings and the credibility determinations of the OAH. The OAH found Officer Hronek's testimony regarding the field sobriety tests, and his personal observations of S.P. to be credible. Both parties had an opportunity to question Officer Hronek, and he was extensively cross-examined by S.P.'s counsel.

Moreover, in failing to give deference to the majority of the findings referenced-above, the circuit court focused its attention on the unmarked boxes in the DUI Information Sheet completed by Officer Hronek. Rather than acknowledge the improper behavior of S.P. as denoted in the DUI Information Sheet and as reiterated by the OAH's findings of fact, the circuit court chose to fixate on the behavior and actions that were not indicative of impairment. For example, in the circuit court's order, under its findings of fact, the court observed that "Officer Hronek did not mark 'Unsteady', 'Staggers', 'Needs

13

Help' or 'Falls Down.'" However, the circuit court's order failed to mention that under the same section of the DUI Information Sheet, Officer Hronek did find "Odor of Alcoholic Beverage on Subject's Breath"; noted S.P.'s speech as "normal, nervous, mumbling, low in volume," her attitude as "nervous," and her eyes as "bloodshot, glassy"; and noted admissions or statements as "sips of Parrot bay – had consumed prior to driving." Moreover, the circuit court failed to mention the first breathalyzer test results from the scene of the arrest—a BAC of 0.03. Instead, the circuit court merely relied on the secondary chemical test—which showed a BAC of 0.019—to establish that S.P. was not in violation of the law.

The circuit court was correct in denoting that a BAC of 0.019 is not a violation of the law as it is below the required level of 0.020 to constitute a violation of City of Wheeling Ordinance 333.01 or West Virginia Code § 17C-5-2 (LexisNexis 2013). However, a BAC of 0.02 is not needed to find evidence of DUI for purposes of a DMV driver's license revocation. As this Court held in Syllabus point 1 of *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984):

> There are no provisions in either W. Va. Code, 17C-5-1 (1981), *et seq*., or W. Va. Code, 17C-5A-1 (1981), *et seq*., that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

The *Albrecht* Court further went on to hold that,

> [w]here there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway,

14

exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

Syl. pt. 2, *id.* Ultimately, it is clear that the circuit court largely ignored the findings of fact established by the OAH, and instead, chose to rely on its own interpretation of the evidence.

Furthermore, as we held in Syllabus point 4 of *In re Queen,* 196 W. Va. 442, 473 S.E.2d 483 (1996): "'Substantial evidence' requires more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If an administrative agency's factual finding is supported by substantial evidence, it is conclusive." Despite any factual dispute between the parties, the DUI Information Sheet unequivocally illustrates that S.P. exhibited physical signs of intoxication, failed two field sobriety tests, and had a BAC of 0.03 on the preliminary breath test. All of this taken together, supports the OAH's finding that S.P. drove a motor vehicle while under the influence.[7] To the extent that the parties disagree on the weight of

---

[7] The circuit court also contends in its order that the OAH's reliance on S.P.'s admission of marijuana use was improper and misplaced. The circuit court noted that there was "no evidence that [S.P.'s] alleged marijuana use in any way impaired her ability to operate a motor vehicle." We find that the findings of fact put forth by the OAH are sufficient to establish by a preponderance of the evidence that S.P. had been driving under the influence of alcohol, controlled substances, or drugs. The fact that S.P. did not make an admission of marijuana use until after her arrest does not negate Officer Hronek's belief that, based on his physical observations of S.P. at the scene, he believed she was under the influence of something besides alcohol. Furthermore, even if we disregard the post-arrest admission of marijuana use, there is still enough evidence to support the findings of the OAH that S.P. was driving under the influence for the purpose of revoking a driver's license. *See* Syl. pt. 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984).

15

the evidence, or the credibility of the witness testimony, these are questions within the scope of the trier of fact—the OAH. These credibility assessments and findings of fact are entitled to deference by the circuit court, and they must not be reassessed unless clear error has been found. Here, the OAH's detailed final order has been examined, and it is evident that the circuit court abused its discretion when it substituted its own view of the evidence for that of the OAH.

## IV.

## CONCLUSION

For the reasons set forth above, the August 8, 2018 order of the Circuit Court of Brooke County is reversed, and this case is remanded for the entry of an order reinstating the DMV's order of revocation.

Reversed and Remanded.